Steve Sinatra MOORE *v.* STATE of Arkansas

CR 94-1183                                                903 S.W.2d 154

Supreme Court of Arkansas
Opinion delivered July 3, 1995

251

*Robert P. Remet*, for appellant.

*Winston Bryant*, Att'y Gen., by: *J. Brent Standridge*, Asst. Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant, Steve Sinatra Moore, appeals the order of the Ashley County Circuit Court of his con-

viction, by jury trial, of continuing criminal enterprise (CCE) under Ark. Code Ann. § 5-64-414 (Repl. 1993) and sentence of imprisonment for forty years and fine of $5,000.00. The state cross-appeals, asserting the trial court erred in setting aside the jury's verdicts of conviction and sentence for the five predicate offenses of the CCE conviction. Our jurisdiction of this appeal is proper because it is a criminal case in which a cumulative sentence of more than thirty years imprisonment has been imposed. Ark. Sup. Ct. R. 1-2(a)(2). We affirm the trial court's judgment on direct appeal, but reverse and remand it on cross-appeal.

### DIRECT APPEAL

Appellant's first argument for reversal is that a tape recording made by the police of a conversation between him and his mother, Gladys Moore, was unlawful and led to the improper introduction of evidence that tainted the trial. We summarily dispose of this argument because appellant failed to abstract any corresponding objection that was raised before the trial court. As we have repeatedly held, to preserve an argument for appeal there must be an objection in the trial court that is sufficient to apprise that court of the particular error alleged. *Halbrook* v. *State*, 319 Ark. 350, 891 S.W.2d 379 (1995); *Owens* v. *State*, 318 Ark. 61, 883 S.W.2d 471 (1994).

Appellant's second argument for reversal is the trial court erred in denying his pretrial motion to suppress an incriminating unsworn oral statement he made on October 28, 1992 to Arkansas State Trooper Dennis Roberts and Ashley County Sheriff's Department Investigator David Oliver during custodial interrogation. In the challenged statement, appellant's admissions included the fact that he had been selling crack cocaine for approximately three years. At trial, the substance of appellant's statement, which was not reduced to writing or otherwise recorded, was admitted through Oliver's testimony.

Evidentiary hearings were conducted on the suppression motion. The evidence showed that at approximately 8:00 a.m. on October 28, 1992, the police executed an arrest warrant for appellant for three counts of delivery of crack cocaine and searched the residence he shared with his mother, Gladys Moore, as well as the nearby mobile home of his sister-in-law, Debra Moore. After the search, at approximately 12:00 noon, appellant, Gladys

Moore and Debra Moore were taken by the police to the Ashley County Sheriff's Office, where each was separately interrogated by Roberts and Oliver that afternoon and appellant's challenged statement was made.

Appellant argues his statement was inadmissible because (1) it was coerced by the state's use of his relatives "as leverage to elicit a 'confession'" and (2) the state violated his right to counsel by proceeding with his interrogation despite appellant's repeated requests to telephone his attorney and his statement that his attorney was "on the way." Neither of these arguments has merit.

## VOLUNTARINESS — COERCION

In reviewing the trial court's determination regarding the voluntariness of a custodial confession or inculpatory statement, this court makes an independent determination based on the totality of the circumstances and does not reverse the trial court unless its determination is clearly against the preponderance of the evidence. *Noble* v. *State*, 319 Ark. 407, 892 S.W.2d 477 (1995). The factors to be evaluated in considering the totality of the circumstances include the age of the accused, lack of education, low intelligence, lack of advice of constitutional rights, length of detention, repeated and prolonged questioning, and the use of physical punishment. *Id.* This court reviews the evidence in the light most favorable to the state. *Id.* When conflicting testimony concerning the circumstances of a confession is offered, it is the trial court's province to weigh the evidence and resolve the credibility of the witnesses. *Id.*

Conflicting testimony was introduced at the suppression hearing on the issue of whether Roberts and Oliver coerced appellant's statement by making references during his interrogation to his mother and sister-in-law and their potential criminal liability arising from items of contraband discovered during the search of their residences. Oliver testified that, during his interrogation, appellant made the statement that his mother and sister-in-law would be arrested unless appellant told the police "what [they] want to know," to which Oliver replied that Gladys and Debra Moore were already arrested and would not be arrested again. The officers testified they discussed with appellant that Gladys and Debra Moore were in custody, but denied that any

promises, threats or coercion occurred. The officers testified that, by his request, appellant's challenged statement was not recorded. The officers testified that appellant wanted to talk and Oliver testified appellant "wanted to talk about cutting a deal." In contrast, appellant testified that threats were made about locking up his mother and that his statement was not true but was given to get his family out of jail which he felt was required "in order to save them."

According to the officers' testimonies, appellant's interrogation began at approximately 3:35 p.m. when appellant was read his constitutional rights, verbally acknowledged to the officers that he understood them, then read and signed a standard Arkansas State Police waiver of those rights. The evidence showed the interrogation lasted two to three hours. In its order denying the motion to suppress, the trial court stated:

> 9. Moore testified he had served in the military for almost three and one-half years, and State's Exh. D, "Description of Subject," indicates he had a tattoo "U.S.M.C." (usually United State [sic] Marine Corps) on his right bicep, and a 12th grade educational level. These factors are additional indication Moore's will was most likely not overcome by anything the officers may have done or by the general stress of the arrest and detention he described.

> 10. Moore apparently does not deny the statement, but claims he gave the statement to get his mother out of jail and to save "them," meaning his mother and sister-in-law. Having found he understood his "rights," waived them, and that his mother and sister-in-law were lawfully in custody that day, his reasons are understandable, but do not invalidate his statement on this record.

██  Appellant's assertion that his statement was coerced by the officers' threats regarding his mother and sister-in-law presented an issue of credibility for the trial court which it adjudged in the state's favor. Given the conflicting evidence, we cannot say the trial court erred in rejecting appellant's claim that his statement was coerced and denying his motion to suppress.

## RIGHT TO COUNSEL

With respect to appellant's alleged repeated requests to use the telephone to contact his attorney, the testimony presented at the suppression hearing was conflicting. Appellant testified, as abstracted: "I asked to use the telephone quite a few times while at home and while here at the station while I was waiting. I was never provided an opportunity to use the telephone, until after the questioning." Oliver testified that, although he did not recall whether appellant asked for an opportunity to telephone his attorney during the search of his residence, he would have denied such a request had it been made and would not have permitted appellant to use the telephone prior to the time he was delivered to the sheriff's office. Oliver testified he did not know if appellant requested the use of the telephone after he reached the sheriff's office prior to the time his interrogation began. Roberts testified he did not recall appellant asking for an opportunity to call his attorney during the search of his residence. However, both officers testified that, at the beginning of his interrogation, appellant was offered the use of a telephone to call his attorney and declined to do so.

With respect to appellant's statement that his attorney was on his way, the testimony at the suppression hearing was not conflicting. The issue presented is a legal one — whether appellant invoked his right to counsel. Oliver testified that when appellant was brought into the interview room and even before his rights were read to him, Roberts said to appellant — "'There's a phone. Call your lawyer if you want to'" — whereupon appellant stated he had already contacted his attorney who was on his way. Oliver testified appellant did not ask for an attorney or specifically invoke his right to an attorney. Roberts testified that, although he did not recall, he believed appellant's statement that his attorney was on the way was made prior to or during the time he read appellant's constitutional rights to him at the beginning of the interrogation. On cross-examination, Roberts testified:

Q  Did he come in and sign the rights form and you — Did he say he wanted to use — About calling his lawyer, you say you gave him an opportunity to call his lawyer?

A  That's correct, yes, sir.

Q  What exactly did you say to him?

A  He said that he wanted to wait till his attorney. And we asked him if he wanted to call his attorney and he said that he was already on the way.

Q  And he said he wanted to wait till his attorney get here?

A  He didn't say that. He said that he— When he talked about this, he said he'd already called an attorney.

Q  Did he indicate to you that he wanted his attorney to get here, wait till his attorney get here before he did anything?

A  No, sir.

The abstract contains no testimony by appellant concerning his statement that his attorney was on the way.

In its order denying the suppression motion, the trial court stated:

> 7. Moore contends he was refused on his requests to make a telephone call to an attorney. Both Officers Oliver and Roberts testified Moore told them, in words to the effect, that his attorney Mr. Smedley had been contacted and was on his way. Even that "announcement," if it occurred, can be waived absent a specific request for an attorney, as Moore did when read his "rights" later in the day. Oliver further testified that during questioning at the station in the afternoon, Officer Roberts told Moore to call his lawyer if he wanted to before giving any statement, and that Moore did not take Roberts up on the offer. Under the totality of these circumstances, the court does not find that Moore ever invoked right to counsel before talking to the officers, nor were the officers under any obligation to wait for a lawyer from out of the area to show up sometime on Moore's behalf. Roberts further testified that he had no recollection of any attorney appearing for Moore by the time of the interview, about 3:35 p.m. about seven and one-half hours had elapsed from arrest to interview, it is reasonable to assume that if any lawyer were coming or trying to contact the authorities on behalf of Moore on October 28, there was ample time for such to occur.

■ With respect to the issue of whether appellant was denied the use of the telephone, we conclude the evidence presented an issue of credibility, which was within the trial court's province to determine, and was determined in the state's favor. We are not persuaded on this record that the trial court's resolution of this issue constituted error.

■ With respect to the issue of whether appellant's right to counsel was violated by the fact that his interrogation occurred after he stated his attorney was on the way, we observe an equivocal request for counsel does not obligate the police to cease questioning and seek clarification but interrogation may continue until the suspect clearly requests counsel. *Boyd* v. *State*, 318 Ark. 799, 889 S.W.2d 20 (1994); *accord Higgins* v. *State*, 317 Ark. 555, 879 S.W.2d 424 (1994). These cases are consistent with the United States Supreme Court's decision reported as *Davis* v. *United States*, ___ U.S. ___, 114 S. Ct. 2350 (1994), wherein the Court stated:

> Although a suspect need not "speak with the discrimination of an Oxford don," . . . he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney.

*Id.* at ___, 114 S. Ct. at 2355. Although the *Davis* Court stated it would be good police practice to inquire of the suspect whether an ambiguous or equivocal statement is a request for an attorney, the Court declined to adopt a rule requiring officers to ask clarifying questions.

■ Viewing the facts of the present case in light of *Davis*, we observe both interrogating officers testified appellant did not specifically request an attorney. In addition, both officers testified appellant's statement that his attorney was on the way was made before Roberts completed the administration of appellant's constitutional rights which he subsequently waived. Appellant offered no testimony on this issue at the suppression hearing. On this record, we find appellant has not shown the trial court erred when it found appellant failed to invoke his right to counsel and denied his motion to suppress.

## CROSS-APPEAL

In addition to the CCE count, appellant was charged in the same felony information with three counts of delivery of cocaine[1] and two counts of possession of cocaine with intent to deliver[2] under Ark. Code Ann. § 5-64-401 (Repl. 1993). The predicate offenses for the CCE count were identified in the information as including, but not limited to, the five simultaneously-charged delivery and possession counts.

At the bifurcated trial, the jury found appellant guilty on all six counts. At the conclusion of the guilt phase, appellant moved that the five delivery and possession convictions be merged into the CCE conviction, by analogy to the crime of felony murder and its requisite predicate offense, and the CCE conviction only be submitted to the jury for deliberation on sentence. The trial court treated the motion as one based on double jeopardy, found it was timely made, and reserved its ruling until after the jury's verdicts on sentence for all six convictions were returned. The jury returned verdicts fixing appellant's sentence at twenty years imprisonment for each of the five delivery or possession convictions, in addition to forty years imprisonment and a $5,000.00 fine for the CCE conviction. Appellant thereupon renewed his motion which was granted in open court over the state's objection. The following day, the trial court entered a supplemental order formalizing its decision, entitled "Findings And Order On Sentencing," in which the trial court stated that double jeopardy applied to the present case and, on the basis of either Ark. Code Ann. §§ 5-1-110(a)(1) or 5-1-110(a)(5) (Repl. 1993), that appellant's motion to prohibit sentencing on the five predicate delivery and possession convictions should be granted. The trial court's order of judgment and sentence here appealed contained only the CCE conviction.

Pursuant to A.R.Cr.P. Rule 36.10(b), the state contends on cross-appeal that the trial court erred in granting appellant's motion and prays we reverse the trial court's judgment and remand the case for reinstatement of the five delivery and possession

---

[1]Dates of delivery were September 30, 1992, October 6, 1992 and October 14, 1992.

[2]Dates of possession were October 28, 1992 and October 26, 1993.

convictions and for further proceedings consistent therewith. The state argues resolution of the cross-appeal hinges on the intention of the General Assembly which, it asserts, is that a defendant convicted of CCE also receive separate convictions and sentences for the predicate offenses, consistent with the interpretation accorded the federal CCE statute by the United States Supreme Court in *Garrett* v. *United States*, 471 U.S. 773 (1985). We conclude the trial court committed error.

Arkansas's CCE statute, section 5-64-414, is essentially modelled on its federal analog, the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 848. *Leavy* v. *State*, 314 Ark. 231, 862 S.W.2d 832 (1993). Section 5-64-414 generally requires proof that the defendant has committed a continuing series of two or more felony offenses set forth in Ark. Code Ann. §§ 5-64-101 to -608 (Repl. 1993) while organizing or supervising at least five other people. The issue raised on cross-appeal is whether simultaneous conviction and sentence for CCE and its predicate felony offenses violate the protection against multiple punishments for the same offense afforded by the federal and Arkansas constitutional double jeopardy clauses. U.S. Const. amend. 5; Ark. Const. art. II, § 8. Section 5-1-110 embodies variations of these constitutional prohibitions against double jeopardy by permitting prosecution but prohibiting conviction of more than one offense if, pursuant to section 5-1-110(a)(1), one offense is included in the other, or, pursuant to section 5-1-110(a)(5), the criminal conduct constitutes an offense defined as a continuing course of conduct. *See* Commentary to Ark. Stat. Ann. § 41-105 (Repl. 1977) (now codified at section 5-1-110).

The United States Supreme Court construed the federal CCE statute in *Garrett*, 471 U.S. 773, and there addressed the relationship between the federal double jeopardy clause and the federal CCE crime in the context of successive prosecutions. In *Garrett*, the appellant's first prosecution resulted in conviction and sentence for one count of importation of marijuana, a federal offense. The appellant's second prosecution resulted in the appealed conviction and sentence for CCE where the series of predicate violations underlying the CCE charge included the earlier importation of marijuana conviction. In affirming the CCE conviction and sentence, the Court held that the double jeopardy clause was not violated.

■ The *Garrett* Court stated the first step in its double jeopardy analysis was to determine whether the legislature intended that each violation be a separate offense where the same conduct violates two statutory provisions. Relying on *Blockburger v. United States*, 284 U.S. 299 (1932), the *Garrett* appellant had argued that his predicate importation of marijuana conviction and the CCE conviction are the "same offense" for double jeopardy purposes because the predicate offense did not require proof of any fact not necessary to the CCE offense. Citing *Missouri v. Hunter*, 459 U.S. 359 (1983), the *Garrett* Court explained the rule of statutory construction enunciated in *Blockburger* and relied upon by the appellant in *Garrett* is not controlling when the legislative intent is clear from the face of the statute or the legislative history. The Court then determined that Congress intended the federal CCE provision to be a separate criminal offense that was punishable in addition to, and not as a substitute for, the predicate offenses.

■ Likewise, we conclude the General Assembly intended section 5-64-414 to be a separate criminal offense that is punishable in addition to, and not as a substitute for, the predicate felony offenses. As already noted, the face of section 5-64-414 is essentially the same language as the federal provision. In the language noted by the *Garrett* Court in its analysis, section 5-64-414 alters the federal CCE language principally in its sentencing provision — whereas the federal statute sets out a separate penalty for CCE unrelated to the penalty for the predicate offenses, the Arkansas statute defines a penalty range by use of a multiplier for the penalty established for the predicate felony. *Cf.* section 848(a)(1) (federal) and section 5-64-414(b) (Arkansas). Although no statement of legislative intent was set forth at the time the Arkansas CCE statute was created in 1989, we observe that in Act 595 of 1995, approved March 17, 1995, the General Assembly specifically amended section 5-1-110 to effectuate its stated intention to authorize separate convictions, sentences, and cumulative punishments for the crime of CCE and any of its predicate offenses. This court has looked to subsequent legislation to determine the General Assembly's legislative intent. *Rosario v. State*, 319 Ark. 764, 894 S.W.2d 888 (1995).

■ The second step in the *Garrett* Court's double jeopardy analysis involved the successive prosecutions issue that is

not applicable to the facts of the present case. The third and final step in the Court's analysis was to determine whether the double jeopardy clause barred cumulative punishments. The Court quoted its *Hunter* decision in this connection: "'the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.'" *Garrett*, 471 U.S. at 793 (quoting *Hunter*, 459 U.S. at 366). The Court again looked to the legislative history of the federal CCE provision and concluded Congress intended separate punishments for the underlying substantive predicates and for the CCE offense. We likewise conclude, based on our examination of section 5-64-414 and on Act 595 of 1995, that the General Assembly intended to authorize separate punishments for violations of section 5-64-414 and the underlying substantive predicate offenses.

■ For the reasons stated in this opinion, we reverse the trial court's judgment and remand this case for reinstatement of the jury's verdicts of conviction and sentence with respect to the predicate delivery and possession convictions and for sentencing proceedings consistent therewith. *State* v. *Schaub*, 310 Ark. 76, 832 S.W.2d 843 (1992).