Donnietha BRADFORD *v.* STATE of Arkansas

CR 96-5 927 S.W.2d 329

Supreme Court of Arkansas
Opinion delivered July 8, 1996

*Mikke Connealy*, for appellant.

*Winston Bryant*, Att'y Gen., by: *David R. Raupp*, Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. Appellant Donnietha Bradford contests her convictions for capital murder, kidnapping, and aggravated robbery and her sentence of life imprisonment without parole. She argues insufficiency of the evidence, breach of her Fifth and Sixth Amendment rights as they pertain to her statements to police, and failure of the trial court to give certain instructions to the jury relating to termination of her accomplice status. Because we conclude that her Sixth Amendment rights were violated in connection with her third statement to police officers, we reverse the convictions and remand for a new trial.

On June 1, 1994, Blytheville police officers were called to the house of Lester Frazier. When they arrived at the house, they found that it had been ransacked, that there was considerable blood on the premises, and that Frazier, a 79-year-old man, was missing. Three days later, Frazier's body was discovered in the Mississippi River south of Osceola. According to the medical examiner, Frazier's death was due to a fractured skull caused by a blunt force. Defensive wounds were found on Frazier's right hand.

On Friday, July 22, 1994, Donnietha Bradford was arrested in connection with Frazier's murder. She was instructed of her *Miranda* rights, and she executed a waiver of rights form at 6:20 p.m. that same Friday. A recorded statement was taken more than four hours later. In that statement, she related that she had a conversation with Rodney Barnett on May 24, 1994, at an Arby's restaurant in Blytheville. She stated that Barnett asked her if she planned to rob Frazier. She informed him that if she had intended to rob Frazier, she would have done so. Barnett replied, "I'll get him." Barnett told her that he knew Frazier's family and that the family had money.

A week later, Barnett told her that he had killed the old man, but gotten no money. She stated that Barnett told her that he cut the screen on Frazier's door and that when Frazier opened the door, he knocked him down. He proceeded to hit Frazier over the head and ask where his money was. Barnett ransacked the house looking for the money, but he could not find it. At that point, he walked across the street to his father's house and got his car. He forced Frazier into the car and drove him to the river. Once they arrived at the river, Barnett took a rock and repeatedly hit Frazier over the

head with it. According to her statement, about a month later, she visited with Barnett at Coleman's Combo in Blytheville. Barnett inquired if Bradford had said anything to anybody about the murder. When she answered "no," he said he wanted to keep it that way. He patted his waistband, indicating that he had a gun.

Approximately an hour and a half after the first interview, the police officers renewed their questioning of Bradford. Bradford gave a second statement in which she added that she had borrowed a pistol from an acquaintance, Frankie Milton, the night before Frazier was murdered. The pistol was inoperable because the cylinder was "broken off."[1] She stated that she borrowed the pistol because she had been threatened by another man. She stated that the next day she talked with Barnett, and she let him borrow the gun. Barnett told her that he had been watching Frazier's house because he was going to rob him. He asked Bradford if she was going to go with him, and she answered that she did not know. Thirty minutes later, they walked to Frazier's house. She saw Barnett approach the front door and begin to cut the screen so that he could unlatch the door. At that point, Bradford left, she stated, because she did not want to rob the man. Later, she returned to Frazier's house to see what Barnett was doing. She stated that she saw the screen door wide open and the front door cracked open. A few minutes later, the door slammed and Barnett began turning the lights off in the house. She walked back down the street and returned to Frazier's house in her car. She saw Barnett put Frazier into the front seat of his car, which he had backed into the driveway. Barnett then drove away with Frazier.

The next day, she saw Barnett, and he told her that he had killed Frazier. He then gave her a detailed account of the murder which tracked the description that Bradford gave in her earlier statement to the police officers. She added that he told her that he had left the gun he had borrowed from her at the river, but that he would retrieve it. Bradford denied helping transport Frazier to the river. She also denied leaving the gun at the river, acting as a lookout for Barnett, and entering Frazier's house.

On Monday, July 25, 1994, a hearing to determine whether

---

[1] According to Frankie Milton, the firing pin was missing, and the chamber would not open.

there was probable cause to detain Bradford was held before the Blytheville Municipal Court. Following the hearing, an affidavit for probable cause was issued, bond was set, and the public defender's office was appointed to represent her. Appointment of counsel was noted by the court on the affidavit for probable cause. Shortly after her appearance, another waiver of *Miranda* rights was executed by Bradford, and police officers renewed their questioning of her. At about 6:45 p.m., Bradford gave a more detailed account of the events of May 31, 1994. Her statement was similar to the previous statements, except that in this statement she added that Barnett forced her at knifepoint to search Frazier's house for money. He further pretended to threaten her with the disabled gun in order to scare Frazier. Barnett stated that he was going to take Frazier to the bank to get some money. When Barnett left to get his car, he ordered Bradford to watch Frazier, and she did so. She saw Barnett hit Frazier on the head, and she saw that his head was bloody. She left the house after Barnett drove away with Frazier in the car.

Bradford was eventually charged with the capital murder, aggravated robbery, and kidnapping of Frazier. Prior to trial, Bradford moved to suppress her three statements to police officers. At the *Denno* hearing conducted during the course of the trial, the trial court denied her motion and allowed all three statements to be introduced into evidence. Following a jury trial, the jury returned a verdict of guilty on all three counts, and Bradford was sentenced to life in prison without parole.

### I. Insufficient Evidence

■■ We first address Bradford's claim that there was insufficient evidence to support the verdict. A motion for a directed verdict is a challenge to the sufficiency of the evidence. *Passley v. State*, 323 Ark. 301, 915 S.W.2d 248 (1996); *Williams v. State*, 321 Ark. 635, 906 S.W.2d 677 (1995). Preservation of an appellant's right to freedom from double jeopardy requires a review of the sufficiency of the evidence prior to a review of trial errors. *Passley v. State, supra; Davis v. State*, 319 Ark. 460, 892 S.W.2d 472 (1995). Accordingly, this court must address a challenge to the sufficiency of the evidence prior to considering an appellant's other assignments of trial error. *Passley v. State, supra; Byrum v. State*, 318 Ark. 87, 884 S.W.2d 248 (1994).

■■ When reviewing the sufficiency of the evidence on

appeal, this court does not weigh the evidence but simply determines whether the evidence in support of the verdict is substantial. *Passley* v. *State, supra.* Substantial evidence is that which is forceful enough to compel a conclusion one way or the other and pass beyond mere suspicion and conjecture. *Id.* In determining whether there is substantial evidence, we review the evidence in the light most favorable to the state, and it is permissible to consider only that evidence which supports the guilty verdict. *Id.* Further, circumstantial evidence may constitute substantial evidence when every other reasonable hypothesis consistent with innocence is excluded. *Id.* Whether a reasonable hypothesis exists is for the trier of fact to resolve. *Id.*

At trial, Bradford made the following arguments for her motion for a directed verdict: On the capital murder charge, she argued that the State failed to prove that she acted alone or with others in causing the death of Frazier in the furtherance of a robbery. As to the aggravated robbery charge, she argued that there was no evidence that she threatened or employed force or that she was armed with a deadly weapon. With respect to the kidnapping charge, she contended there was no evidence to support the claim that she restrained the victim in any way.

The State urges that Bradford has changed her argument on appeal in that she now argues she was forced to participate in the robbery and that she never agreed to participate in the crimes. The State adds that this argument is, in reality, not an argument regarding the sufficiency of the evidence to support the conviction but is, rather, an argument that her participation was the result of duress, which requires an acquittal. We disagree with the State. Bradford maintains that the only evidence presented to prove her complicity is her third statement to police officers that she was forced to participate in the crimes and that that evidence is not valid evidence to show that she was an accomplice to the crimes. Accordingly, her argument continues to be that the State's evidence was inadequate to sustain the convictions.

The keystone of the State's case against Bradford was her third statement to police officers. Putting aside for the moment the legitimacy and propriety of that third statement, we hold that the State presented substantial evidence for the jury to find that she committed the crimes. Discounting her duress defense, there was evidence that she discussed the planning of the crime with Barnett,

that she loaned him a pistol to use, that she entered Frazier's house with Barnett, that she was present when Barnett initially struck Frazier on the head, that she searched the house for money, that she watched Frazier while Barnett left to get his car, and that Frazier's head was bleeding when he left the house. There was also much blood on the premises evidenced by photographs which showed the severity of the beating.

The jury did not have to believe Bradford's contention that she acted only out of duress. The jury could reasonably have believed that she voluntarily participated in the robbery attempt, that she voluntarily restrained the victim prior to his kidnapping by Barnett, and that her actions culminated in Frazier's death. Indeed, the jury could well have concluded that the fatal head injury occurred at Frazier's house. Cause of death was a fractured skull, and Frazier's head was bleeding when Barnett placed him in the car.

## II. Suppression of Statements

Bradford next argues that the trial court erred in denying her motion to suppress the three statements she gave to Blytheville police officers. She initially asserts that she requested an attorney prior to giving her first statement to the police officers but was denied counsel in violation of her Fifth Amendment rights. The investigating officers testified at the *Denno* hearing, however, that Bradford never requested an attorney. They stated, to the contrary, that she completed the waiver of rights form and that, from all appearances, she understood her rights.

In reviewing a trial court's decision concerning the voluntariness of a custodial statement, this court makes an independent determination based on the totality of the circumstances and does not reverse the trial court unless that court's ruling is clearly against the preponderance of the evidence. *Moore v. State,* 321 Ark. 249, 903 S.W.2d 154 (1995). When conflicting testimony concerning the circumstances of a confession is offered, it is within the trial court's province to weigh the evidence and resolve the credibility of the witnesses. *Id.* In the instant case, there was conflicting evidence on whether Bradford requested counsel prior to her statements. The trial court apparently did not find that she requested an attorney. We conclude that this ruling was not clearly erroneous.

Bradford's second suppression argument·is that her third incul-

patory statement taken after her probable cause hearing and appointment of counsel should have been suppressed as a result of a violation of her Sixth Amendment right to counsel. She points to the fact that she was arrested on Friday, July 22, 1994 and appeared before the Blytheville Municipal Court on the following Monday, July 25, 1994. At that appearance, the court determined that there was probable cause to support the charges against her. The court fixed bond and appointed the public defender's office to represent her. This action was memorialized in the court's affidavit of probable cause which was executed that same date. Bradford admitted at the *Denno* hearing that she was unaware that the court had appointed counsel for her. The investigating police officers also denied knowledge that Bradford had been appointed counsel. The trial court found, following the *Denno* hearing, that counsel had indeed been appointed for her prior to her third statement but that she had waived the right to counsel before giving that last statement.

The issue before us is whether the municipal court's appointment of counsel at the probable cause hearing curtailed subsequent police interrogation though neither police officers nor Bradford were aware of the appointment and though Bradford waived her *Miranda* rights before the third interrogation. The United States Supreme Court addressed the Sixth Amendment right to counsel in *Michigan v. Jackson*, 475 U.S. 625 (1986). That case involved two consolidated cases. One defendant, Bladel, was arraigned on a murder charge and asked at his arraignment that an attorney be appointed for him because of his indigency. The Court appointed counsel and mailed a notice of the appointment to the law firm. Bladel was not told that counsel had been appointed. Before the notice was received, police officers interviewed Bladel and, after advising him of his *Miranda* rights, obtained a confession. Jackson, the other defendant, also asked that counsel be appointed for him during his arraignment on murder charges. The next day, before he had an opportunity to consult with counsel, police officers interviewed him and, again, after advising him of his rights under *Miranda*, obtained a confession. In both cases, the investigating officers were present at the arraignment.

The Michigan trial courts denied the defendants' motions to suppress, but the Michigan Supreme Court reversed. The United States Supreme Court affirmed that reversal. In its decision, the

Court framed the pivotal issue by first stating that the Sixth Amendment provides the right to counsel at postarraignment interrogations which is a critical stage of the proceedings and signals the initiation of adversary judicial proceedings. The question then was whether the defendants effectively waived that right by executing a *Miranda* waiver after arraignment. In the course of its opinion, the Court stated:

> Indeed, after a formal accusation has been made — and a person who had previously been just a "suspect" has become an "accused" within the meaning of the Sixth Amendment — the constitutional right to the assistance of counsel is of such importance that the police may no longer employ techniques for eliciting information from an uncounseled defendant that might have been entirely proper at an earlier stage of their investigation.

> ....

> The State points to another factual difference: the police may not know of the defendant's request for an attorney at the arraignment. That claimed distinction is similarly unavailing. In the cases at bar, in which the officers in charge of the investigations of respondents were present at the arraignments, the argument is particularly unconvincing. More generally, however, Sixth Amendment principles require that we impute the State's knowledge from one state actor to another. For the Sixth Amendment concerns the confrontation between the State and the individual. One set of state actors (the police) may not claim ignorance of defendants' unequivocal request for counsel to another state actor (the court).

475 U.S. at 632, 634. The Court went on to hold that "[i]f police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid." 475 U.S. at 636.

What distinguishes this case from *Michigan* v. *Jackson, supra,* is that in this case, Bradford did not request counsel at her probable cause hearing, but nevertheless the public defender was appointed to represent her without her knowledge. Thus, must a defendant affirmatively invoke her Sixth Amendment right to counsel in order

to be afforded the protections provided by *Michigan* v. *Jackson, supra?* In footnote 6 of *Michigan* v. *Jackson, supra,* the Court stated:

> In construing respondents' request for counsel, we do not, of course, suggest that the right to counsel turns on such a request. *See Brewer* v. *Williams,* 430 U.S. at 404 ("[T]he right to counsel does not depend upon a request by the defendant"); *Carnley* v. *Cochran,* 369 U.S. 506, 513 (1962)("[I]t is settled that where the assistance of counsel is a constitutional requisite, the right to be furnished counsel does not depend on a request"). Rather, we construe the defendant's request for counsel as an extremely important fact in considering the validity of a subsequent waiver in response to police-initiated interrogation.

465 U.S. at 633.

■ We read *Michigan* v. *Jackson* to stand for the proposition that once the Sixth Amendment right to counsel attaches and once the defendant requests counsel, an ordinary waiver of *Miranda* rights will not suffice to validate a subsequent confession. The same principle should apply to appointed counsel, which is the situation that we have before us. The fact that Bradford was unaware that she was appointed counsel is irrelevant. We note in this regard that defendant Bladel in *Michigan* v. *Jackson, supra,* was similarly unaware. Moreover, police officers under *Michigan* v. *Jackson, supra,* are deemed to be aware of counsel's appointment through imputed knowledge. Once counsel was appointed by the court, knowledge of the appointment was imputed to police officers, and they were under an affirmative obligation to respect it. Just as a police officer who wishes to initiate an interrogation during the custody stage must determine if a request for counsel has been made (*Arizona* v. *Roberson,* 486 U.S. 675 (1985)), simple diligence requires that police officers take pains to learn whether counsel was appointed at a probable cause hearing.

The State relies on *Patterson* v. *Illinois,* 487 U.S. 285 (1988), to support its theory that Bradford waived her right to counsel by executing the *Miranda* waiver prior to the third statement. It is true that in *Patterson,* the defendant was interrogated postindictment and signed a waiver-of-counsel form. But defendant had not requested counsel; nor had one been appointed for him. Thus, the Supreme Court held that the defendant's waiver in *Patterson* was knowing and

intelligent under *Johnson* v. *Zerbst*, 304 U.S. 458 (1938). The critical fact, though, that did not exist in *Patterson* but exists in the instant case is that counsel had already been appointed for Bradford, and under *Michigan* v. *Jackson, supra,* knowledge of that fact was imputed to the police officers. The failure of police officers to learn about the appointment and obtain a statement from Bradford that she did not want appointed counsel present at the interrogation is what requires suppression in this case.

 Case law in this state also militates in favor of suppression. In *Bussard* v. *State,* 295 Ark. 72, 747 S.W.2d 71 (1988), we held that once the Sixth Amendment right to counsel attached and once counsel had been retained, even if there had been no formal request at the probable cause hearing as in *Michigan* v. *Jackson,* a defendant enjoyed the right to rely on counsel as a medium between himself and the state. *See Maine* v. *Moulton,* 474 U.S. 159 (1985). More significantly, in *Sutherland* v. *State,* 299 Ark. 86, 771 S.W.2d 264 (1989) (per curiam), we held that once counsel had been appointed, any waiver in connection with police-initiated interrogation was invalid under *Michigan* v. *Jackson, supra,* and *Arizona* v. *Roberson, supra.* In the instant case, the Sixth Amendment right to counsel had clearly attached, and counsel had been appointed. Though Bradford never formally requested counsel, the court's appointment provided a medium between herself and investigating officers. Her mere waiver of *Miranda* rights could not equate to a waiver of appointed counsel, a fact of which she was unaware.

The State concedes that *Sutherland* v. *State, supra,* dictates an outcome in favor of Bradford on this issue but urges this court to overrule *Sutherland* on the basis that *Sutherland* does not accurately reflect the opinions of the United States Supreme Court. We decline to do so. *Sutherland* v. *State* seems to fit squarely within the Supreme Court decisions on the issue of when the Sixth Amendment right to counsel attaches and the validity of subsequent *Miranda* waivers. *Michigan* v. *Jackson, supra,* holds that the Sixth Amendment right to counsel attaches when counsel is requested and a subsequent waiver of *Miranda* rights is of no consequence. We perceive no valid reason for not applying the same principle to situations where counsel has already been appointed. *Patterson* v. *Illinois, supra,* is distinguishable on its facts because in that case no counsel had been appointed by the court.

■ It should be noted that the Arkansas Court of Appeals has recently held that the mere appointment of counsel is not enough. Rather, there must be an affirmative invocation of the right to counsel in order to invalidate a later confession. *See Lanes* v. *State*, 53 Ark. App. 266, 922 S.W.2d 349 (1996). That decision is in direct conflict with our decision today. Accordingly, we overrule *Lanes* v. *State* on that point.

■ We further note that Rule 8 of the Arkansas Rules of Criminal Procedure dictates a reversal in this case. Rule 8.2 provides that the trial court shall appoint counsel to represent an indigent defendant at the first appearance, if the right is not knowingly and intelligently waived. An appointment of counsel was made here. Rule 8.3 provides that upon the first appearance of the defendant before the judicial officer, and after the defendant is advised of his rights:

> No further steps in the proceedings other than pretrial release inquiry may be taken until the defendant and his counsel have had an adequate opportunity to confer, unless the defendant has intelligently waived his right to counsel or has refused assistance of counsel.

Thus, under our rule, an attorney for an indigent defendant should be appointed at the probable cause hearing, or the State must show that right to have counsel appointed at the hearing was specifically waived. *See Sutton* v. *State*, 262 Ark. 492, 559 S.W.2d 16 (1977).

■ There is a third issue raised by Bradford in this case. Nevertheless, because it is somewhat speculative as to whether the issue of alleged trial court error in not giving a certain instruction — AMCI2d 601 — will reoccur on retrial, we will not address the point. Suffice it to say, that where any evidence to support an instruction is before the jury, that instruction must be given. *State* v. *Jones*, 321 Ark. 451, 903 S.W.2d 170 (1995).

Reversed and remanded.

DUDLEY, J., not participating.