Cite as 2020 Ark. 222

# SUPREME COURT OF ARKANSAS

No. CR-00-1384

| | |
|---|---|
| RODNEY E. BARNETT<br>PETITIONER | **Opinion Delivered** June 4, 2020 |
| V. | |
| STATE OF ARKANSAS<br>RESPONDENT | PRO SE THIRD PETITION TO REINVEST JURISDICTION IN THE TRIAL COURT TO CONSIDER A PETITION FOR WRIT OF ERROR CORAM NOBIS; MOTIONS FOR APPOINTMENT OF COUNSEL AND FOR ORAL ARGUMENT |
| | [MISSISSIPPI COUNTY CIRCUIT COURT, CHICKASAWBA DISTRICT, NO. 47BCR-94-372] |
| | <u>PETITION DISMISSED; MOTION FOR APPOINTMENT OF COUNSEL AND MOTION REQUESTING ORAL ARGUMENT MOOT</u>. |

**JOHN DAN KEMP, Chief Justice**

Petitioner Rodney E. Barnett brings this pro se third petition to reinvest jurisdiction in the trial court to consider a writ of error coram nobis. In the petition, Barnett primarily alleges a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), in that the State failed to disclose "actual knowledge before trial that [Larry] Black [Barnett's cellmate] intended to lie and perjure himself" because "Black and [Barnett] were never in the same jail cell and therefore Black[']s testimony of a jailhouse confession by [Barnett] simply could not be true." Because this court has previously addressed Barnett's claim, we dismiss the petition as an abuse of the

writ.[1] The motion for appointment of counsel and the motion requesting oral argument are thereby rendered moot.

## I. *Facts*

Barnett was charged with capital murder in the death of Lester Frazier. The evidence at trial reflects that Frazier's family reported the seventy-nine-year-old missing on June 1, 1994, and three days later, his body was discovered in the Mississippi River. Donneitha Bradforth, who had previously pleaded guilty to the charge of first-degree murder for the death of Frazier and received a forty-year sentence, testified that Barnett solicited her assistance in robbing Frazier but that Frazier was still alive when she saw Barnett and Frazier leaving the apartment. Black testified that he shared a jail cell with Barnett and that Barnett admitted his participation in killing Frazier. In 2000, Barnett was convicted by a jury in the Mississippi County Circuit Court of the capital murder of Lester Frazier, for which he was sentenced to life imprisonment without parole. We affirmed. *Barnett v. State*, 346 Ark. 11, 53 S.W.3d 527 (2001).

In 2006, Barnett filed in this court a pro se petition to reinvest jurisdiction in the trial court to consider a petition for writ of coram nobis in which he alleged that the prosecutor withheld material evidence in order to bolster Black's testimony. Barnett claimed that the

---

[1]Although Barnett titled his petition as one requesting alternative relief of a "motion to recall mandate and/or alternatively . . . to reinvest[,]" motions to recall the mandate are applicable to redress errors in the appellate process—meaning an error this court made or overlooked while reviewing a case in which the death penalty was imposed. *See Ward v. State*, 2015 Ark. 61, 455 S.W.3d 818. Motions to recall the mandate and coram nobis proceedings are not interchangeable. The death penalty was not imposed in Barnett's case, and Barnett has failed to allege extraordinary circumstances through his "combined" petition that would permit reopening the case through recalling the mandate in his direct appeal.

2

prosecutor withheld records that would have supported his claim that he never shared a jail cell with Black; thus, Black's testimony regarding a jailhouse confession could not have been credible. This court denied the petition because Barnett's claim that he did not share a cell with Black was made a part of the record through Black's cross-examination; therefore, Barnett failed to demonstrate a fundamental error of fact extrinsic to the record, and coram nobis relief was not appropriate. *Barnett v. State*, CR-00-1384 (Ark. Jan. 25, 2007) (unpublished per curiam).

In 2015, Barnett filed in this court a pro se second petition to reinvest jurisdiction in the trial court to consider a petition for writ of error coram nobis alleging the prosecutor withheld exculpatory evidence and knowingly allowed the State's witness to commit perjury. Specifically, Barnett contended that the prosecutor withheld information pertaining to a confidential informant, later identified as Floyd Riley, and that the information could have been used to impeach the testimony of Bradford and Black. Barnett's family friend Carla Johnson stated in a sworn affidavit that Riley explained to her that Bradford admitted killing the victim with her boyfriend and that Bradford never mentioned Barnett's name to Riley in Bradford's description of the crime. This court found that there was no *Brady* violation to warrant issuance of the writ because "[a]s Riley testified at the trial of Barnett's accomplice[, Bradford,] it is clear that the defense was aware, or could have been aware, of his identity and testimony at the time of trial." *Barnett v. State*, 2015 Ark. 190, at 5, 461 S.W.3d 683, 687 (per curiam). This court further found that Barnett failed to set forth any facts to show that the defense could not have obtained the informant's identity or that the prosecutor refused to disclose any requested information—had any request been made. *Id.*

3

## II. *Writ of Error Coram Nobis*

The petition for leave to proceed in the trial court is necessary because the trial court can entertain a petition for writ of error coram nobis after a judgment has been affirmed on appeal only after we grant permission. *Newman v. State*, 2009 Ark. 539, 354 S.W.3d 61. A writ of error coram nobis is an extraordinarily rare remedy. *State v. Larimore*, 341 Ark. 397, 17 S.W.3d 87 (2000). Coram nobis proceedings are attended by a strong presumption that the judgment of conviction is valid. *Green v. State*, 2016 Ark. 386, 502 S.W.3d 524. The function of the writ is to secure relief from a judgment rendered while there existed some fact that would have prevented its rendition if it had been known to the trial court and which, through no negligence or fault of the defendant, was not brought forward before rendition of the judgment. *Newman*, 2009 Ark. 539, 354 S.W.3d 61. The petitioner has the burden of demonstrating a fundamental error of fact extrinsic to the record. *Roberts v. State*, 2013 Ark. 56, 425 S.W.3d 771.

The writ is allowed only under compelling circumstances to achieve justice and to address errors of the most fundamental nature. *Id.* A writ of error coram nobis is available for addressing certain errors that are found in one of four categories: (1) insanity at the time of trial, (2) a coerced guilty plea, (3) material evidence withheld by the prosecutor, or (4) a third-party confession to the crime during the time between conviction and appeal. *Howard v. State*, 2012 Ark. 177, 403 S.W.3d 38. The burden is on the petitioner in the application for coram nobis relief to make a full disclosure of specific facts relied upon and not to merely state conclusions as to the nature of such facts. *Henington v. State*, 2020 Ark. 11, 590 S.W.3d 736.

Here, Barnett contends that Black and Barnett were never in the same jail cell; thus, Black's testimony that Barnett gave a jailhouse confession could not be true. Barnett further contends that the prosecution had "actual knowledge" that Black intended to lie because the prosecution solicited Black's participation in "this travesty" with "the promise of reward in the form of leniency in pending criminal charges[.]" Barnett claims that because the prosecution withheld favorable evidence regarding the nature of, and motivation for, Black's testimony that was both exculpatory and impeaching, he was prejudiced. Because Barnett has raised these allegations before and because he fails to establish a ground for the writ to issue, the petition is dismissed on that basis.

III. *Abuse of the Writ*

The claims that Barnett and Black never shared a jail cell, that Black's testimony was not credible, and that the prosecutor withheld the nature of Black's testimony and how it acquired it in violation of *Brady* have been raised in both Barnett's first and second coram nobis petitions.[2] Because Barnett has alleged no fact sufficient to distinguish his claims in the instant petition from the claims in his first two petitions, his reassertion of largely the same claims is a misuse of the remedy. This court will not address those issues again. *Swanigan v. State*, 2019 Ark. 294, 586 S.W.3d 137; *see also Smith v. State*, 2018 Ark. 396, 562 S.W.3d

---

[2]Although Barnett makes a conclusory claim that Black received favorable treatment in exchange for his testimony, Barnett offers no evidence to support his claim, and a court considering a claim of a *Brady* violation in a coram nobis petition is not required to take a petitioner's allegations at face value without substantiation—which Barnett fails to provide. *Thacker v. State*, 2016 Ark. 350, 500 S.W.3d 736. As this court noted in Barnett's first petition to reinvest jurisdiction, the substance of Black's testimony was disclosed prior to trial, and trial counsel was free to cross-examine Black about the nature of, and motivation for, his testimony. *See Barnett*, CR-00-1384.

211. Thus, Barnett has abused the writ in this instance. Accordingly, we dismiss the petition and hold that the motion for appointment of counsel and the motion requesting oral argument are moot.

Petition dismissed; motion for appointment of counsel and motion requesting oral argument moot.

HART, J., dissents.

**JOSEPHINE LINKER HART, Justice, dissenting.** Rodney Barnett filed a pleading styled "Petition to Recall the Mandate, or alternatively, Petition to Reinvest Jurisdiction in the Trial Court to Consider the Writ of Error Coram Nobis." In this petition, Rodney Barnett presents a claim of prosecutorial misconduct. His argument is that the prosecution knowingly presented perjured testimony against Barnett at his murder trial through a jailhouse witness, one Larry Black. Black testified that Barnett made a wholesale, detailed to confession to him years before while the two were sharing a jail cell. Black's role in the prosecution's case was not disclosed until just a few days before Barnett's original trial date. Moreover, the prosecution did not disclose jail records showing that Black and Barnett were never cell mates, despite Black's testimony to the contrary at trial. Barnett's claim of prosecutorial misconduct has evaded judicial review, and the majority sidesteps the issue once again by erecting a procedural bar. The majority's holding that Barnett's instant petition amounts to "abuse of the writ" cannot be made in good faith. Justice demands that Barnett's claim be addressed. I would order an evidentiary hearing and appoint Barnett counsel.

Barnett's petition identifies several related issues concerning the testimony of Larry Black, the jailhouse witness who testified against Barnett at his murder trial. While some of

6

these issues have been individually addressed (to varying degrees) by this court on prior occasion, others (particularly, the claim of prosecutorial misconduct) have evaded review. Barnett argues that the collective weight of these issues warrants recalling the mandate from his direct appeal. Alternatively, he asks us to reinvest jurisdiction in the trial court to consider the writ of error coram nobis, since one of the related issues is an alleged *Brady* violation, and *Brady* violations are cognizable in error coram nobis proceedings.

However, the majority dismisses Barnett's petition without considering any of his claims. The majority refuses to consider any of the issues identified in the motion to recall the mandate portion of Barnett's petition because, according to the majority, this court is powerless to even consider a motion to recall the mandate because this is not a death penalty case and Barnett's case lacks "extraordinary circumstances"—without addressing how or why the circumstances of Barnett's case are not extraordinary. Then, since the alleged *Brady* violation has been considered by this court on prior occasion (but only on a limited, individual basis), the majority dismisses the error coram nobis portion of Barnett's petition as "abuse of the writ."

I disagree with the majority's handling of Barnett's petition. Recalling the mandate is obviously a rare and extraordinary form of relief, but there is no sound reason for limiting the availability of that relief to cases where the death penalty has been imposed. Furthermore, labeling Barnett's petition as abuse of the writ is beyond the pale. To this day, Barnett still has not received a meaningful judicial assessment of what is perhaps his strongest overarching legal claim: that the prosecution knowingly introduced perjured testimony to convict him. The *Brady* violation described in the error coram nobis portion of Barnett's petition is

colored by and directly related to this overarching claim of prosecutorial misconduct. The prosecutorial misconduct issue represents Barnett's strongest argument for a new trial, yet this argument has never been addressed in the 25 years he has been pursuing relief. This is extraordinary.

Accordingly, I dissent. Instead of generalizing that these issues are either incognizable or previously ruled upon, we should simply address Barnett's claim as he has presented it to us. Furthermore, because Barnett's claim for prosecutorial misconduct, if proven, would entitle him to relief, we should direct this matter to a trial court for an evidentiary hearing. To that effect, I offer the following minority opinion.

On June 1, 1994, the family of 79-year old Lester Frazier reported to police that Frazier was missing from his apartment and that his apartment was in disarray. On June 4, 1994, police found Mr. Frazier's body floating in the Mississippi River near Osceola. An autopsy by the State Medical Examiner's Office determined that Frazier's death was a homicide primarily caused by blunt trauma to the head.

On July 22, 1994, police arrested Donneitha Bradford in connection with Frazier's death. While in custody, Bradford gave multiple statements to police implicating Rodney Barnett in Frazier's murder. The police arrested Barnett on July 25, 1994, and he gave a statement to police. However, before Barnett were taken to trial, Barnett escaped from jail.

The prosecution brought Bradford to trial for capital murder, and she was convicted, but her capital murder conviction was reversed on direct appeal. *Bradford v. State*, 325 Ark. 278, 927 S.W.2d 329 (1996). On remand, in lieu of standing a second trial, Bradford entered a negotiated plea of guilty to first-degree murder and was sentenced to forty years in prison.

Meanwhile, Barnett, according to his petition, was recaptured by police in 1999. At Barnett's capital murder trial for Frazier's death, Bradford testified in the State's case-in-chief against Barnett as an accomplice, pursuant to her negotiated plea. Bradford testified that Barnett solicited her assistance in robbing Frazier, and that she went to Frazier's residence with Barnett, but that when she left the residence, Frazier was still alive, and she saw Frazier and Barnett leaving the residence together. Another witness, Larry Black, testified that he shared a jail cell with Barnett before Barnett escaped, and that during that time, Barnett confessed to him, in detailed fashion, about the kidnapping, robbery, and murder of Frazier. Barnett was convicted of capital murder, aggravated robbery, and kidnapping, and received a sentence of life without parole. This court affirmed. *Barnett v. State*, 346 Ark. 11, 53 S.W.3d 527 (2001).

Again, most of Barnett's issues relate to the trial testimony of Larry Black. Black's role as a witness in the State's case was not disclosed to the defense until just a few days before the originally scheduled trial date. Black maintained that Barnett confessed to him some six years earlier while the two were cell mates (before Barnett escaped), and that he told Lieutenant Wilson about Barnett's murder confession and plans to escape at that time. However, Lieutenant Wilson testified that he had no recollection of Black making any such statement to him, adding that "usually when a situation like that comes up, I inform my superiors of those facts, like C.I.D., and Captain Stovall," which "never happened" in this situation, and that he would have remembered if it had. Black also maintained that he did not testify at Bradford's trial, but when presented with a transcript of his testimony from Bradford's trial, Black acknowledged that he did actually testify, and that he never mentioned

9

Barnett's name during that testimony. In his present petition, Barnett maintains that jail records show he and Black were never cell mates. Further, Barnett contends that Black's criminal charges were dropped in exchange for his testimony against him.

At trial, after Black testified, Barnett sought to impeach Black's testimony by calling another witness, Frank Melton.[1] During Black's cross-examination, the defense had asked Black if he had received a video camera from Melton after Frazier's murder, or whether Melton owed Black any money around the time of Frazier's murder. Black testified that he could not recall the former and outright denied the latter. Barnett then sought to have Melton testify that he gave Black a video camera as payment for a debt and that Black gave him a rock of crack cocaine in return. The trial court excluded Melton's testimony from the jury's consideration as collateral. Barnett's counsel did proffer Melton's testimony for the record on appeal. However, on appeal, this court held that Barnett's counsel had failed to challenge the trial court's ruling that Melton's testimony would have been collateral and declined to address the issue. Here is where the breakdown related to Black's testimony begins.

After his direct appeal, Barnett filed a Rule 37 petition for postconviction relief in Mississippi County Circuit Court. In his Rule 37 petition, Barnett argued, among other things, that his trial counsel was ineffective for failing to adequately investigate his case—specifically, failing to discover and investigate a police report about a call from a criminal informant concerning Frazier's murder. Barnett argued that this report would have aided in

---

[1]At some points in the record, this individual's name is spelled "Melton," and at others, it is spelled "Milton."

his impeachment of Black and would have provided exculpatory evidence implicating a separate suspect. The information contained in the report's narrative is as follows:

> Informant called in reference to the murder of Lester Frazier on McHaney St. in Blytheville, Ark. Informant stated that a B/M named Larry Black stated to the informant that a suspect named Frank Melton had tried to sell Larry Black a camcorder belonging to the deceased Mr. Lester Frazier [cut off]—7/21/94—Frank Milton (sic) was spending money with blood on it the night Frazier was killed—spending with dope dealer.

[End of excerpt]. This report identified Melton as a "suspect."

At the Rule 37 hearing, Barnett attempted to bring this issue to the court's attention. This led to the following exchange between Barnett and the court:

MR. BARNETT: On July 20, 1994, at approximately 9:00 A.M. and unknown confidential informant, only known as Informant Number 353, called the Mississippi County Police Department and made contact with Sergeant Larry Hillis in regards as to some information in reference to the murder of Lester Frazier on McHaney Street in Blytheville, Arkansas, that a black male named Larry Black had stated to him or her that a subject named Frank Milton tried to sell to Larry Black a camcorder that belonged to the deceased Mr. Lester Frazier and that this same such—

THE COURT: I believe all that came up in the trial, didn't it?

PROSECUTOR: Yes, sir.

THE COURT: It came up and there was a hearing by the Court, and the Court ruled on the admissibility of that evidence, and that should have been a subject matter of appeal. But I remember that being raised, and the Court ruled against the evidence. What else?

MR. BARNETT: That was all the grounds I raised at this point.

THE COURT: Do you have any witnesses you want to call?

[End of Excerpt]. The court and the prosecutor at the Rule 37 hearing were erroneously referring to the exclusion of Melton's testimony at Barnett's trial, when Barnett was actually

11

referring to the report from the informant. The record does not support that there had been any hearing before Barnett's trial concerning the report itself, nor any related evidentiary ruling. The court would eventually deny Barnett's Rule 37 petition, and Barnett appealed. However, on appeal, this court refused to consider Barnett's argument about the report because the trial court did not specifically address the issue in its order denying postconviction relief. *Barnett v. State*, CR 02-1166 (Ark. Nov. 13, 2003) (per curiam). Hence, the issues surrounding Black's testimony and Barnett's restricted ability to demonstrate the falsity thereof continued to evade review.

After this court affirmed the denial of his Rule 37 Petition, Barnett filed with this court his first petition to reinvest jurisdiction in the trial court to consider the writ of error coram nobis. In his first error coram nobis petition, Barnett alleged prosecutorial misconduct and a *Brady* violation—specifically, that the prosecution withheld jail records that would have shown that Barnett and Black never shared a jail cell while Barnett was awaiting trial, contrary to Black's testimony at Barnett's trial. This court denied Barnett's first error coram nobis petition, reasoning that because Black had testified at trial and was subject to cross-examination, Black's claim that he and Barnett shared a jail cell was not extrinsic to the record, so error coram nobis was inapplicable. *Barnett v. State*, CR 00-1384 (Ark. Jan. 25, 2007) (per curiam). The opinion acknowledged but then simply did not address Barnett's prosecutorial misconduct argument. *Id*.

Subsequently, Barnett filed with this court a second petition to reinvest jurisdiction in the trial court to consider the writ of error coram nobis. In his second error coram nobis petition, Barnett alleged another *Brady* violation—specifically, that the prosecution

12

"withheld information pertaining to a confidential informant, his identity, and a statement made by him to police regarding the murder for which Barnett was convicted." This is the same informant whose report was at issue in Barnett's Rule 37 petition, which the order denying Rule 37 relief did not specifically address. Barnett's second error coram nobis petition explained that a family friend, Carla Johnson, had since discovered the identity of the confidential informant to be Floyd Riley. Johnson's affidavit provided that she interviewed Riley, that Riley explained that Bradford admitted killing the victim with her boyfriend, Frank Melton, that Bradford never mentioned Barnett's name to Riley in her description of the crime, and that, on the night of the murder, Melton was spending money with blood on it to buy drugs from Larry Black. This court denied Barnett's second error coram nobis petition without relief, reasoning as follows:

> Barnett contends that the identity of the confidential informant was unknown to him at the time of trial but that the prosecutor and the circuit court were aware of the informant's identity because the informant was subpoenaed to testify at Bradford's trial. As Riley testified at the trial of Barnett's accomplice, it is clear that the defense was aware, or could have been aware, of his identity and testimony at the time of trial.

*Barnett v. State*, 2015 Ark. 190, at 5–6, 461 S.W.3d 683, 687.

This brings us to Barnett's assertion in the instant petition that we should recall our mandate in CR-00-1384. We will recall the mandate only in the most extraordinary circumstances. *Logan v. State*, 2019 Ark. 373, 590 S.W.3d 730 (citing *Key v. State*, 2019 Ark. 202, 575 S.W.3d 554). For example, to establish the extraordinary circumstances required, we consider (1) the presence of a defect in the appellate process, (2) whether federal court proceedings have been dismissed because of an unexhausted state court claim, and (3)

whether this is a death-penalty case requiring heightened scrutiny. *Id*. Our task here is to determine whether the history of this matter reflects a defect in the appellate process, or there exist other such extraordinary circumstances that warrant recalling the mandate. *Logan*, *supra*.

Barnett acknowledges that some of the issues related to Black's testimony and impeachment would have been properly addressed on direct appeal or during the litigation of his Rule 37 petition, which Ark. R. Crim. P. 37.2 dictates must be filed within sixty days from the issuance of the mandate on direct appeal. Nonetheless, Barnett maintains that certain procedural irregularities prevented the issues from being addressed at those stages, e.g., this court's procedural bar on direct appeal, the circuit court's omission of a ruling from its order denying Rule 37 relief (to the extent the circuit court understood Barnett's argument), and this court's additional procedural bars in Barnett's appeal from that order. Furthermore, it does not appear that any court of this State has ever actually addressed Barnett's prosecutorial misconduct argument: that the prosecution knowingly introduced false testimony to obtain Barnett's conviction for capital murder. To me, this is a breakdown in the judicial process. Barnett cites *Mooney v. Holohan*, 294 U.S. 103 (1935),[2] *Pyle v. Kansas*, 317 U.S. 213 (1942), and

---

[2]"[W]e deem it sufficient for the present purpose to say that we are unable to approve this narrow view of the requirement of due process. That requirement, in safeguarding the liberty of the citizen against deprivation through the action of the state, embodies the fundamental conceptions of justice which lie at the base of our civil and political institutions. It is a requirement that cannot be deemed to be satisfied by mere notice and hearing if a state has contrived a conviction through the pretense of a trial which in truth is but used as a means of depriving a defendant of liberty through a deliberate deception of court and jury by the presentation of testimony known to be perjured. Such a contrivance by a state to procure the conviction and imprisonment of a defendant is as inconsistent with the

14

*Napue v. Illinois*, 360 U.S. 264 (1959),[3] all of which involve the Supreme Court acknowledging availability of postconviction relief for the prosecution's knowing use of perjured testimony, in support of this argument. Barnett contends that the sum of these circumstances warrant recalling the mandate in his case.

Indeed, the knowing use of perjured testimony is condemnable. It is "implicit in any concept of ordered liberty" that "a State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction[.]" *Napue*, 360 U.S. at 269. This principle "does not cease to apply merely because the false testimony goes only to the credibility of the witness." *Id*.

Considering the weight of these circumstances together, I would order an evidentiary hearing on Barnett's claims. As was the case in *Pyle*,

> Petitioner's papers are inexpertly drawn, but they do set forth allegations that his imprisonment resulted from perjured testimony, knowingly used by the State authorities to obtain his conviction, and from the deliberate suppression by those same authorities of evidence favorable to him. These allegations sufficiently charge a deprivation of rights guaranteed by the Federal Constitution, and, if proven, would entitle petitioner to release from his present custody.

---

rudimentary demands of justice as is the obtaining of a like result by intimidation. And the action of prosecuting officers on behalf of the state, like that of administrative officers in the execution of its laws, may constitute state action within the purview of the Fourteenth Amendment." *Mooney*, 294 U.S. at 112–13 (internal citations omitted).

[3]"The principle that a State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction, implicit in any concept of ordered liberty, does not cease to apply merely because the false testimony goes only to the credibility of the witness. The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend." *Napue*, 360 U.S. at 269.

317 U.S. at 215–16 (internal citations omitted). It's not just that the jail records could have helped Barnett during his cross-examination of Black at trial. The jail records also support Barnett's assertion that the prosecution knew Black would be lying if they put him on the witness stand to testify about a confession allegedly made while the two shared a jail cell. The withholding of material evidence is one form of constitutional violation, and knowingly introducing false testimony is another (though the two could certainly be related to each other, as in this case). In Barnett's case, I do not see where the latter of these claims has ever received any form of judicial assessment. Considering that the Supreme Court of the United States has shown essentially zero tolerance for this form of misconduct, Barnett may deserve a new trial. This necessitates an evidentiary hearing on Barnett's claim of prosecutorial misconduct, an appointed attorney to assist him in that proceeding, and a special judge who has no prior involvement in this matter.

I dissent.

*Rodney E. Barnett*, pro se petitioner.

*Leslie Rutledge*, Att'y Gen., by: *Joseph Karl Luebke*, Ass't Att'y Gen., for respondent.