MORRISON-KNUDSEN COMPANY, INC., *v.* LEA.

4-7550                                    186 S. W. 2d 429

Opinion delivered March 5, 1945.

*Ernest Briner* and *Henderson, Meek, Catlett & Henderson,* for appellant.

*Kenneth C. Coffelt,* for appellee.

McFADDIN, J.   The sole issue presented is whether a verdict of $600 is excessive in this case.

Roane Lea was the owner of a farm of 170 acres in Saline county.   On. November 26, 1943, he executed a "Grant of Easement" whereby, for $52.90 and the agreements therein contained, he allowed the grantee the right, *inter alia,* to lay, operate, and maintain a pipe line across the land.   In the instrument the grantee agreed: ". . . to pay any and all damage to stock, crops, fences, timber, improvements, and land which may be suffered by the grantor(s) from the construction, operation, alteration, renewal, inspection or maintenance of such pipe line(s), power line and telephone line."

The appellant company, under the authority of the said grant, entered on the lands, and constructed the pipe line, and inflicted damages to appellee's property. When no payment was made for such damages the appellee instituted this action in the Circuit Court for damages. The cause was tried to a jury, and from a verdict and consequent judgment for $600 appellant presents this appeal, arguing, as before stated, the one question of whether the verdict is excessive.

I. *On Appeal, This Court Gives to the Testimony Tending to Sustain the Verdict Its Highest Probative Value.* Bolin v. *Drainage District,* 206 Ark. 459, 176 S. W. 2d 143; see West's Arkansas Digest *Appeal and Error,* § 930(1). This rule applies also to any question concerning the verdict as excessive. *Malvern & O. R. R. Co.* v. *Smith,* 181 Ark. 626, 26 S. W. 2d 1107. In 5 C. J. S. 433, the rule is stated:

"An appellate court views the evidence favorably to the amount of recovery granted and generally disregards conflicting contrary evidence. The burden rests on the appellant or plaintiff in error to show error as to amount of recovery." See, also, West's Decennial Digest, *Appeal and Error,* § 932(1).

II. *Evidence Introduced by Plaintiff Concerning the Amount of the Damages.*

(a) The plaintiff detailed various items of damages: drainage ditches filled up with rocks and dirt thereby flooding several acres, crops ruined, top soil removed, land left in holes, etc. Then plaintiff made answers to questions as follows:

"Q. What do you think it would take to put the property back into the same shape it was before the pipe line was laid?

"A. It would cost at least $1,000. It would be necessary to haul soil and re-soil it, which would be impossible to place back on top. For the purpose for which I use this land, it has been permanently damaged, destroyed."

. . . . .

"Q. The difference in value before and after damage, would it be the same as would cost you to restore the land to same condition before the damage was done?

"A. Yes, sir."

(b) C. C. Allen, a farmer and resident of Saline county, testified that he knew this land, and had viewed it to determine the extent of the damages. He detailed various items of damage, much the same as the plaintiff,

and concluded that for farming purposes the land was ruined, and that the damage was $1,000.

(c)   W. F. Rich testified that for twenty-three years he had lived within a mile of the land, and was familiar with it, and had viewed it to determine the extent of the damages inflicted by the appellants. After detailing various items of damage, he stated that the land was unfit for farming. The record discloses:

"Q.   Taking into consideration the value of that property of Mr. Lea before this damage was done, that is what you think it would have brought at that time, whether it was $10 or $12 per acre, and what it would bring now, tell the jury what would be the difference in the value of the property?

"A.   It isn't fit for a thing on earth now.

"Q.   What would be the amount of difference in value?

"A.   You mean the whole thing?

"Q.   Yes.

"A.   To fix it back like it was would take at least $1,000.

"Q.   Would you say that would be the difference of the fair market value before and after the damage?

"A.   Yes, I think that would just about be enough to get the land like it was before it was damaged."

(d)   Roy Boone, who owns adjoining land, testified as to the damages done by the appellants:

"Q.   Do you think that the condition that this land is in now could be used for farming purposes now?

"A.   It wouldn't be worth anything for farming without putting the top soil back on.

"Q.   Taking into consideration the condition of the land prior to November 17, 1943, and the condition of the land now, what would you tell the jury would be the difference in the fair market value as of these two periods?

"A. I would say $1,000."

There was no reversible error committed in permitting these witnesses to express their opinions as to the amount of the damage. *St. L., A. & T. R. Co.* v. *Anderson,* 39 Ark. 167; *Texas & St. L. R. Co.* v. *Kirby,* 44 Ark. 103; *Malvern & O. R. R. Co.* v. *Smith, supra.* Even though various measures of damage were stated—*i. e.,* temporary damages, permanent damages, and damages to improvements—nevertheless, the case was tried by the plaintiff on the basis of the permanent damage to the land; and permanent damages were recovered. See *Benton Gravel Co.* v. *Wright,* 206 Ark. 930, 175 S. W. 2d 208.

III. *There Was a Question of Fact for the Jury.* It is true that the appellants introduced witnesses who testified to the exact contrary of the testimony of the witnesses for the appellee. But the net result of all the evidence is that a question of fact was made for the jury; and it is the province of the jury to settle such a question. Two classic sentences from the United States Supreme Court are apropos: "We see no reason, so long as the jury system is the law of the land, and the jury is made the tribunal to decide disputed questions of fact, why it should not decide such questions as these, as well as others." *Jones* v. *East Tenn. V. & G. R. Co.,* 128 U. S. 443, 9 S. Ct. 118, 32 L. Ed. 478. "Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions, or because judges feel that other results are more reasonable." *Tennant* v. *Peoria & Pekin R. Co.,* 321 U. S. 29, 64 S. Ct. 409, 88 L. Ed. 520. The record shows that there is substantial evidence to sustain the verdict of $600; therefore, we cannot say that the verdict is excessive.

Affirmed.