TURCHI *v.* SHEPHERD.

5-1904                                            327 S. W. 2d 553

Opinion delivered September 28, 1959.

*McMillan & McMillan,* for appellant.
*Lookadoo, Gooch & Lookadoo,* for appellee.

CARLETON HARRIS, Chief Justice. The sole question in this litigation is whether a judgment of $3,500, rendered for appellee against appellant, is excessive.

On September 27, 1957, appellee, Thomas Shepherd, was riding in the back seat of an automobile, which had stopped for a stop light in Pine Bluff, Arkansas. Appellant, Frank Turchi, struck the rear of a car immediately behind the vehicle in which Shepherd was riding, knocking that car forward into the Shepherd vehicle. Suit was instituted by Shepherd for injuries alleged to have been sustained as a result of this occurrence. A "whip-lash" injury to the neck, strained tendons in the neck and shoulders, spinal injury, shock to the nervous system, and a general soreness over the body for a number of weeks, were alleged. $10,000 damages was sought. After the filing of a general denial, the cause proceeded to trial on November 7, 1958, before the court, sitting as a jury. Additional medical testimony was taken a week later, and at the conclusion of the evidence, the court entered its findings and rendered judgment in the amount heretofore mentioned.

Appellee's evidence was substantially as follows. Shepherd, age 60, was working in August and September of 1957, as a pipe fitter on construction of the International Paper Company in Pine Bluff, earning $3.50 per hour, or $28 per day. He had previously been involved in a similar collision on September 5th, near Sheridan, but testified that he was "practically well" when the collision in Pine Bluff took place. The evidence reflected that he lost no time from work following the Sheridan incident, and that he was paid $75 in settlement of that claim. With reference to the injury sustained in the present instance, appellee testified that when the car hit the back of the vehicle, his head struck the edge of the seat, and popped the chin strap to the safety hat he was wearing at the time. According to his evidence, he was sick at his stomach all during the night . . . worked next day, but was given a lighter job because he did not feel like performing his regular duties . . . worked on until the 2nd or 3rd

of May until the job was completed. Admittedly, he worked at the same rate of pay, and lost no time, though the duties were lighter. Shepherd stated that he consulted Dr. Eli Gary, a general physician of Arkadelphia, three or four days after receiving the injury, at a time when Dr. Gary was out at his home treating another member of the family, and that he had subsequently seen Gary several times, and finally had x-rays taken on August 16, 1958.

Dr. Gary testified that after Shepherd complained so long, he took x-rays on the above date, but did not find any evidence of a fracture, though it was his opinion that Shepherd suffered a whiplash injury, *i.e.,* his neck had been slapped backward and forward, causing pain and a decompression after injury. Dr. R. V. Bennett, a practicing physician of Hot Springs, testified that in his opinion, Shepherd had suffered a fracture of the first cervical vertebrae, and a basilar impression,[1] both injuries being at the base of the skull. He testified that basilar impressions are very rare, since most receiving such injury are killed instantly, and "as far as I know, only thirty-eight now that are walking around * * * "; that Mr. Shepherd's condition would grow progressively worse with time, and the basilar impression would necessitate an operation. He testified that Shepherd had suffered a permanent injury.[2] The witness stated that the injury probably happened more than three months prior to the examination,[3] but he could not pin-point it as occurring on September 5th, 27th, or any particular date.

Appellant's medical evidence consisted of the testimony of Dr. J. W. Kennedy of Arkadelphia, who testified that Shepherd consulted him on September 7th (two days after the wreck at Sheridan), and that Shepherd complained of pain between his neck and shoulders and "that part of his neck located at the base of the skull." The doctor's diagnosis was "possible traumatic cervical vertebrae injury which could possibly cause trau-

---

[1] A forcing of the spinal cord up and into the skull.
[2] Referring to the basilar impression.
[3] Examination was made on October 31, 1958.

matic arthritis at a later date'', though he stated ''that is all hypothetical, as we had no x-ray, no way of knowing''. He testified that recent x-rays showed no fractures, but some arthritic change from the 3rd to 6th vertebrae, and that there was no indication of any basilar impression. Dr. T. M. Durham, an orthopedic surgeon of Hot Springs, testified that he found no fracture, or basilar impression, as testified to by Dr. Bennett, and further testified that he had never seen or heard of a traumatic basilar impression; that if Shepherd had received a traumatic basilar impression, the result likely would have been death.

The court found, and we concur with such finding, that it was not preponderantly shown that Shepherd suffered a basilar impression. Further findings were as follows:

''It is preponderantly shown, and the Court so finds, that in the wreck of September 27th at Pine Bluff, plaintiff received an impact of substantial force — of sufficient 'popping' effect to break the strap on his safety hat. At that time he was not a young man. Dr. Gary's x-rays showed arthritic changes 'from the second down'. Dr. Kennedy found 'some spurring'. Dr. Durham found evidence of chronic cervical syndrome and narrowing of the fourth cervical disc; likewise he found degenerative arthritis and abnormality of motion in the spine about the fourth cervical space.

Whereas a young and able-bodied person could have escaped the collision with only minor soreness, it is entirely logical that one of Shepherd's age and condition could not experience such a quick, whipping and unsuspected jar without suffering telling effects. * * * The doctors do not agree that there was a fracture. If not, there was certainly such a strain on the spine and its components as to produce results comparable to the pains of such a fracture.

The complaint of the plaintiff as to continued pain to the date of trial is not inconsistent with the over-all medical testimony and the physical facts involved in

the impact. However, the evidence is not sufficient to show the same to be permanent, or to show that plaintiff is entirely disabled from following a livelihood. * * *''

The court also made reference to the September 5th wreck, and stated:

"At the time of the wreck in Pine Bluff, he may have had some residual of the Sheridan wreck; if so, the severity of the blow from the rear by Turchi would certainly have served to aggravate any condition existing from the experience of September 5 at Sheridan. So it appears to the court that the present major complaints preponderantly appear to have originated from the experience at Pine Bluff.''

Appellant, in seeking a reduction of the amount of judgment, summarizes the evidence of injury as follows: appellee sustained a temporary injury to the muscles of the neck, with accompanying pain and headache; a previous injury had been received three weeks before from which appellee had not completely recovered; no medical treatment until after the suit was filed, other than consultations with the family doctor a few times and some tablets for pain, and no loss of time from his work until the job was finished in May, 1958, some eight months after the alleged injury was sustained. Appellant points out that the only evidence as to permanent injury came from Dr. Bennett's testimony that appellee had suffered a basilar impression — and that this was rejected by the court. He concludes by saying:

"No broken bones — no loss of consciousness — no loss of time — no outstanding evidence of bruises or contusions, but only subjective symptoms testified to by Plaintiff himself — at best, only an aggravation of an admitted injury to the identical area only three weeks before.''

Appellant then cites a number of cases to substantiate his argument that the award was excessive.

We agree that permanent injury was not established, and are further of the opinion that the award

was liberal, but it does not follow that a reduction of the judgment is justified. A comparison of awards made in other cases is a most unsatisfactory method of determining a proper award in a particular case, not only because the degree of injury is rarely the same, but also because the dollar no longer has its prior value. Even as far back as 1928, in the case of *Missouri-Pacific Railroad Company* v. *Elvins,* 176 Ark. 737, 4 S. W. 2d 528, this Court said:

"In this connection it may be also stated that the jury may consider to some extent that money today has much less purchasing power than it had twenty or even fifteen years ago. This is a matter of common knowledge to all, of which courts and juries may take judicial notice."

Certainly, it is a matter of common knowledge that today's dollar has greatly diminished in value during the past several years. Be that as it may, we do not agree with appellant's statement that the evidence shows no loss of time. The transcript reflects the following evidence on the part of Mr. Shepherd:

"Q. What have you done since the 2nd day of May?

A. Have not worked a bit.

Q. Could you have gotten employment?

A. Called me before I left to go on another job but I couldn't.

Q. Why?

A. My neck was in too bad a shape.

Q. What has kept you from working?

A. My neck has kept me from working."

As previously stated, Shepherd testified that he earned $28 a day; accordingly, he would only have to lose 125 working days to equal the amount of the judgment, and this, of course, disregards entirely any pain and suffering. According to the quoted testimony, he had lost 134 working days (Monday through Friday)

at the time of the trial, *and this testimony was undisputed.*[4]

We are unable to say that the amount awarded was excessive, and it follows that the judgment of the Clark Circuit Court should be, and is, affirmed.

[4] Of course, the testimony of a party to the litigation is considered disputed as a matter of law, and therefore, standing alone, will not support a peremptory instruction in his favor, but such testimony constitutes substantial evidence to support a jury verdict; this case, of course, was tried by the court, sitting as a jury.