MATTINGLY *v.* GRIFFIN.

5-2876                                       363 S. W. 2d 919

Opinion delivered January 21, 1963.

*Rieves & Smith,* for appellant.

*Hale & Fogleman,* for appellee.

SAM ROBINSON, Associate Justice. On May 11, 1959, appellee, Elizabeth Ann Simmons, who later married and

is now Elizabeth Ann Griffin, was driving east on Broadway in West Memphis. She stopped at an intersection with the intention of turning to the left, but could not do so immediately because of oncoming traffic. While she was waiting for an opportunity to proceed to her left, the car she was driving was struck from the rear by a car owned by Swift & Company and driven by its employee, Thomas J. Mattingly.

Elizabeth Ann was 18 years of age at the time and in high school. She went to school the next day, but about 3 o'clock she had to call her father to come and get her because of pain in her neck and back. Her father took her to Dr. Deneke, who sent her to the hospital and ordered that her neck be placed in traction. She was put on a hard bed and a halter apparatus was attached to her head and in turn a weight was attached to the halter, causing a pulling effect on the neck. She remained in the hospital for a week wearing this apparatus practically all the time, with the exception of one instance when she left the hospital to take her examinations at high school, and on another occasion when she left the hospital to attend graduation exercises. At the end of the week she went home where she remained for about two weeks and then returned to work.

At the time of the accident, Elizabeth Ann was working at a concession stand at a drive-in from about 6 p.m. to 10 p.m. each day. She earned $25.00 per week and got $10.00 per week as automobile expense. She continued to work at one job or another until the day of the trial, some three years later. She married in September, 1960; a child was born in 1961; and at the time of the trial in April, 1962, she was expecting another child.

Her hospital bill was $126.65, doctor bill $57.00, loss of earnings $105.00. She suffered no broken bones, no bruises, no lacerations, and there was no injury to the boney structure of the back bone. Her injuries consisted of a strain to the muscles, ligaments, and tendons of the neck and back. There were no objective symptoms of the injury. Her subjective symptoms were that her neck and back were painful.

Her father, H. D. Simmons, joined her in the suit and asked for compensation to reimburse him for the damages to his automobile, which was $737.02, the hospital bill, $126.65, and the doctor bill, $57.00. It was stipulated that he was damaged in the sum of $920.67. Elizabeth Ann's actual money damages amounted to $105.00 for loss of time from work; the balance of her damages was due to pain and suffering.

Upon a trial of the case the jury returned a verdict for Elizabeth Ann in the sum of $10,000.00, and a verdict for her father in the sum of $10,000.00. Upon the jury being polled it was discovered that there was an error; that the jury intended to return verdicts for a total of $10,000.00. Thereupon, the Court instructed the jury to retire and reconsider the verdicts. After further deliberation, the jury returned a verdict for Elizabeth Ann in the sum of $8,000.00 and for her father in the sum of $2,000.00. As heretofore mentioned, it had been stipulated that Simmons' damages were $920.67. He therefore promptly filed a remittitur for all of the verdict in excess of that amount. Thereupon, the Court entered judgment for that amount for Simmons, and a judgment for Elizabeth Ann in the sum of $8,000.00.

On appeal appellant contends, first, that the judgment for Elizabeth Ann in the sum of $8,000.00 all of which, except for $105.00, was for pain and suffering, is excessive. Second, that the Court erred in permitting the jury to again consider the verdicts after having returned verdicts for each of the plaintiffs in the sum of $10,000.00. Third, that the Court erred in accepting the verdict of the jury after the plaintiff, Mr. Simmons, had filed a remittitur.

The action of the Court in allowing the verdicts to be corrected was proper. *Clift* v. *Jordon,* 207 Ark. 66, 178 S. W. 2d 1009, and the filing of the remittitur was in no way prejudicial to Simmons.

Elizabeth Ann saw the doctor seven times after she returned to work; the last time was almost two years prior to the trial. She testified, however, that she slept

in the neck harness for eight months after returning home from the hospital. She had a normal courtship and has worked for wages all the time, in addition to doing her housework.

Perhaps the jury was deeply impressed by the self-sacrificing spirit of this young woman. During the time she was going to high school she worked at night at a drive-in from 6 p.m. to 10 p.m. and she passed her grades in school and graduated. She returned to work three weeks after she was injured and worked continuously thereafter. At the time her baby was born she was off work only 30 days. At the time of the trial she was again pregnant but was still working on a paying job in addition to doing her housework and the shopping for the family.

Actually, the evidence does not show that there was much wrong with her. Her physician, Dr. Deneke, testified that she suffered a strain to the muscles of the neck and lower back. The doctor said she had muscle spasms, "A charlie horse". Q: What can cause a spasm to the muscle? A: A simple injury as all of you have had at one time or another.

The least that can be said is that the jury was reckless in the verdicts returned. In the first instance they gave Simmons a judgment for $10,000.00. He had only asked judgment for $1,000.00. Of course it was shown that this was an error, but it was certainly a serious. error. It had been stipulated that his damages amounted to only $920.67, and the second verdict for him was for $2,000.00. Elizabeth Ann asked for $10,000.00 for pain. and suffering, and the jury's first verdict was for $9,895.00 for pain and suffering, and the second was for a total of $8,000.00.

The fact that the jury returned a $2,000.00 judgment for Simmons, after first having returned a $10,-000.00 verdict for him, when it had been stipulated that. his damages amounted only to $920.67, shows rather conclusively that the jury was influenced by passion or prejudice or had an incorrect understanding of the facts.

in the case. In the case of *Turchi* v. *Shepherd*, 230 Ark. 899, 327 S. W. 2d 553, we pointed out that "A comparison of awards made in other cases is a most unsatisfactory method of determining a proper award in a particular case . . .". In that case, where a similar injury was involved, we were of the opinion that a $3,500.00 verdict was liberal. In the case at bar, we are of the opinion that any amount above $5,000.00 for pain and suffering is excessive.

Accordingly, if appellee files a remittitur within 15 judicial days, as indicated, the judgment will stand affirmed; otherwise, it will be reversed and the cause remanded for new trial.

It is so ordered.

Johnson, J., dissents.

Jim Johnson, Associate Justice, (Dissenting). I do not agree with the majority view. The record is clear that the jury intended to return a total overall verdict in the amount of $10,000. It is true that the jury became somewhat confused in the technical aspects of filling out the verdict forms, but this in my view does not justify the majority's conclusion that "the jury was influenced by passion or prejudice or had an incorrect understanding of the facts in the case".

While reviewing this case as an appellate jury, which of course is not our province on appeal from a jury verdict, *Morrison-Knudsen Co.* v. *Lea*, 208 Ark. 260, 186 S. W. 2d 429, the majority in the process of speculating as to why the jury returned the verdict for Mrs. Griffin in the amount of $8,000, observed that "perhaps the jury was deeply impressed by the self-sacrificing spirit of this young woman". To the contrary, it is my view that the jury refused to disregard the substantial evidence of injury and pain which this young woman was caused to suffer and endure as a result of the negligence of appellant.

The evidence is undisputed that Miss Simmons (later Griffin), who had just become 18 years old was

in her father's car when it was hit from the rear. She hit the steering wheel. The next morning she had a soreness all over and woke up real stiff-necked. She went to school, but around 2:00 the soreness got to hurting so bad she called her father to take her to a doctor. It hurt badly when she attempted to make movements of her head or back. She couldn't continue her school work because of the pain and required assistance to go into the doctor's office.

She was placed immediately in the hospital and put in traction, which consisted of a strap under her chin and neck, on either side of her face, buckled at the back to a strap snug against her head, connected to a rope, leading over a pulley with a bucket full of dirt (for weight) hanging at the end of the rope. This pulled her neck back and she lay flat on her back when using it. Application of traction did not relieve all of the pain. When in traction she could get on her side, but was uncomfortable because it twisted her neck. She couldn't lie on her stomach. In the hospital she could move her head slightly. She even ate in traction and could not go to the rest room the first two days. She had pain even when in traction, but hurt a lot worse out of it.

She continued to remain in traction in her home for two weeks every afternoon from about 1:30 P.M., and slept in it at night. She was out of traction in the mornings, but her neck was stiff and uncomfortable and hurt her all the time. She was out of traction from 5:00 P.M. until 9:00 P.M., and slept in it all night, until about 9:00 A.M. The traction did not relieve all pain. She continued to sleep in the traction every night until the first of January, 1960, and used it "quite frequently" in the afternoons after the first three weeks.

Almost there years later (at the time of trial), because of continuing pain in her back, she still sleeps on the hospital bed to relieve the pain three or four nights per week and has at all times since the collision. She has a backache just about every day. The extent of the pain suffered the first eight months was very uncom-

fortable and was severe enough to cause her to cry four or five times, ''The pain was unbearable.''

Her doctor's testimony verified the existence of her injury and pain, and even appellants' doctor, who examined Mrs. Griffin more than once, confirmed that appellee did have the injuries she testified to, and stated that he found nothing about Mrs. Griffin's attitude, demeanor or conduct that caused him to believe she was faking complaints, but found she was ''very well motivated, cheerful, and I think very honest in her statements to me.''

To say the least, it is my view that there was substantial evidence to support the jury verdict—certainly it cannot be said that the verdict was so excessive and unreasonable as to shock my conscience. *Grandbush* v. *Grimmett,* 227 Ark. 197, 297 S. W. 2d 647. Accordingly, I would affirm the judgment and therefore respectfully dissent to the majority opinion.