## Calvin MORRIS v. STATE of Arkansas

CR 02-662 94 S.W.3d 914

Supreme Court of Arkansas
Opinion delivered January 16, 2003

[Petition for rehearing denied February 13, 2003*]

---

* IMBER, J., would grant.

*James Law Firm*, by: *William Owen James, Jr.*, and *Clay Buchanan*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Katherine Adams*, Ass't Att'y Gen., for appellee.

R OBERT L. BROWN, Justice. Appellant Calvin Morris was convicted of first-degree murder and sentenced to forty years in prison. He appeals on the basis that the circuit court erroneously refused to instruct the jury on second-degree murder and manslaughter. We agree that the circuit court erred in not giving an instruction on second-degree murder, but we affirm the court's refusal to instruct on manslaughter.

During the evening hours of November 26, 1999, Morris and a friend, Daniel Fells, were leaving a nightclub in Little Rock called Elevations and walking towards Morris's car when a second car driven by Chris Sharp entered the parking lot. In the car driven by Sharp were his wife, Sonya, and Leonard Jackson and Johnny Jackson. According to Morris's testimony, the Sharp car approached him "real fast," and he had to jump away to avoid being hit.

An argument ensued between the occupants of the Sharp vehicle and Morris. The Sharp vehicle drove up a hill, turned around, and came down the hill where there was a second encounter between the occupants of the Sharp vehicle and Morris and Daniel Fells, who were now in a car which was also occupied by Courtney Grandy and Kevin Brown. Insults were exchanged, and Kevin Brown fired his pistol.

The Sharp vehicle left the parking lot and proceeded down Asher Avenue. At the intersection of Asher and University Avenues, Morris's car pulled up beside the Sharp car. There was another vehicular accident at the intersection involving other people, which police officers were investigating. When the light turned green, Morris testified that the window in the back seat of Sharp's car was halfway down, and he thought he saw a gun.

He further testified that he was scared and panicked. According to witnesses, he fired two or three shots at the Sharp vehicle. One shot passed through the backseat window and struck Chris Sharp in the back of the head, killing him.

Morris was charged with first-degree murder and committing a terroristic act and was tried before a jury. His defense attorney offered instructions on second-degree murder and man-

slaughter as lesser included offenses, but the circuit court refused to give them. The jury was instructed on justification as a defense. The jury found Morris guilty of first-degree murder and committing a terroristic act but was unable to arrive at a sentence. The circuit court sentenced Morris to forty years on each offense, with the sentences to be served concurrently.

■ Morris appealed his first-degree murder conviction to the court of appeals on grounds that it was error for the circuit court not to instruct on the lesser included offenses of second-degree murder and manslaughter. The court of appeals agreed that it was error not to give these instructions and, in an unpublished opinion, reversed the murder conviction and remanded for further proceedings. *Morris v. State*, CA CR01-1056 (June 5, 2002). The State petitioned this court for a review of the court of appeals decision, and we granted review. When we grant review, we consider the matter as if the appeal had been originally filed in this court. *Flores v. State*, 348 Ark. 28, 69 S.W.3d 864 (2000).

*I: Second-Degree Murder*

Morris first contends that it was error for the circuit court not to instruct on second-degree murder. We agree.

Morris's counsel proffered the following instructions, relating to second-degree murder, which are based on Ark. Code Ann. § 5-10-103(a)(1) and § 5-2-202(2) (Repl. 1997), after the circuit court refused to give them:

AMCI 2d 1003
SECOND DEGREE MURDER
Calvin Morris is charged with the offense of murder in the second degree. To sustain this charge, the State must prove beyond a reasonable doubt that:
Calvin Morris knowingly caused the death of Christopher Sharp under circumstances manifesting extreme indifference to the value of human life.

DEFINITIONS
"Knowingly" — A person acts knowingly (or with knowledge) with respect to his conduct or the circumstances that exist at the time of his act when he is aware that his conduct is of the

nature or that such circumstances exist. A person acts knowingly with respect to a result of his conduct when he is aware that it is practically certain that his conduct will cause such a result.

 This court has frequently stated that it is reversible error to refuse to instruct on a lesser-included offense when there is the slightest evidence to support the instruction. *See, e.g., Ellis v. State*, 345 Ark. 415, 47 S.W.3d 259 (2001); *Harshaw v. State*, 344 Ark. 129, 39 S.W.3d 753 (2001). We have further made it clear that we will affirm a trial court's decision not to give an instruction on a lesser-included offense if there is no rational basis for giving the instruction. *See Ellis v. State, supra; Harshaw v. State, supra.*

The question before us, then, is, whether a rational basis exists for giving the second-degree murder instruction. Stated differently, was there evidence, however slight, that supported giving the instruction. We believe that there was.

 We have recently said that for a defendant to be entitled to an instruction for the lesser-included offense of second-degree murder, he "must be able to point to evidence in the record that supports a finding that he acted with a 'knowing' mental state rather than a 'purposeful' mental state." *Britt v. State*, 344 Ark. 13, 23, 38 S.W.3d 363, 370 (2001). In the case before us, it is beyond dispute that Morris shot his pistol. On direct examination, he testified:

| | |
|---|---|
| Defense Counsel: | Is your window down? |
| Morris: | Yes, sir. |
| Defense Counsel: | Is his [Kenneth Jackson's] window down all the way? |
| Morris: | No, sir. It's like halfway. |
| Defense Counsel: | Okay. |
| Morris: | And so I believed the light turned green because it had to turn green for us to continue on. And right when the light had turned green, I thought I seen — I thought I seen him reach for a gun and I |

was scared. I freaked out and I shot. I didn't aim or nothing, I just reacted to the situation.

Based on the fact that Morris testified that he knowingly shot at the Sharp vehicle without aiming at Chris Sharp, the victim, the jury could have believed that there was evidence to support a knowing mental state as opposed to a purposeful mental state to kill Chris Sharp. *See Britt v. State, supra.* Moreover, he testified that it was Kenneth Jackson that he believed had a gun, not Chris Sharp.

■ The circuit court erred in refusing to give the second-degree murder instruction.

## II: Manslaughter

We turn next to Morris's contention that he was entitled to an instruction on the lesser-included offense of manslaughter, and, specifically, an instruction on reckless manslaughter. The circuit court refused to so instruct, and Morris's counsel proffered the following instructions based on Ark. Code Ann. § 5-10-104(a) and 5-2-202(3) (Repl. 1997):

AMCI 2d 1004
MANSLAUGHTER

Calvin Morris is charged with the offense of manslaughter. To sustain this charge, the State must prove beyond a reasonable doubt that:

(A) Calvin Morris caused the death of Christopher Sharp under circumstances that would be murder, except that he caused the death under the influence of extreme emotional disturbance for which there was a reasonable excuse. You should determine the reasonableness of the excuse from the viewpoint of a person in Calvin Morris's situation under the circumstances as he believed them to be: or

(B) Calvin Morris recklessly caused the death of Christopher Sharp.

DEFINITIONS

"Recklessly." — A person acts recklessly with respect to the results of her conduct when she consciously disregards a substantial and unjustifiable risk that the results will occur. The risk must be of a nature and degree that disregard thereof constitutes a gross deviation from the standard of care that a reasonable person would observe in the same situation.

Again, the test for whether an instruction should be given is whether there is the slightest evidence to support the instruction and whether there is no rational basis for giving the instruction. *See Ellis v. State, supra; Harshaw v. State, supra.* In reviewing whether slight evidence or a rational basis exists for giving the manslaughter instruction, we first consider what evidence Morris could conceivably have relied on for recklessly forming a belief that he needed to use deadly force against the Sharp vehicle. We come up with the following:

- In an earlier incident in a nightclub parking lot, the Sharp car almost hit Morris.

- Occupants in the Sharp car and Morris's car began arguing after that.

- Later in the evening while Morris's car and Sharp's car were side-by-side at a stop light, an occupant in the victim's car either started to roll down his window or had partially done so already. Morris thought he saw a gun, panicked, and shot Chris Sharp.

- Only one person, Daniel Fells, other than Morris testified that threats came from Sharp's car, but Fells admitted on cross-examination that he probably had told the police officers following the shooting that no threats were made.

Morris relies on the case of *Harshaw v. State, supra,* as precedent for reversing the circuit court. But in *Harshaw,* there was evidence to the effect that the victim had a gun and intended to use it. We wrote in *Harshaw*:

> According to Mr. Harshaw's testimony and that of other eyewitnesses, Mr. Cunningham then made several statements insinuating that if there was a problem, he would settle it with a gun:

- "Oh, that's all right. I'll just go get my gun and shoot it up."

- "It'll be some pistol play out here."

- "I'll·get my nine and shoot this MF up."

- "If there was a problem, I'd have a gun."

- "Well, you know, if it was a problem, I'd have my gun and I'd shoot — be shooting it up out here, you know."

- "K-3 [Casey Cunningham] ain't no punk. If I got a problem, I just boom boom boom like that."

Thereafter, Mr. Harshaw testified that he and Mr. Cunningham both turned and went to their respective cars. Several eyewitnesses stated that Mr. Cunningham reached into his car through the window on the driver's side of the car. At the same time, Mr. Harshaw went to the trunk of his car, opened it, and retrieved a shotgun. As Mr. Cunningham came back up from reaching into the car, Mr. Harshaw shot him in the chest. Mr. Harshaw testified that he was afraid Mr. Cunningham was about to pull a pistol from his car and shoot him. As it turned out, Mr. Cunningham did not have a gun.

*Harshaw*, 344 Ark. at 131, 39 S.W.3d at 754-55.

■ We held in *Harshaw* that there was some evidence to support a finding that he recklessly formed the belief that Cunningham was about to shoot him, and that the circuit court erred in not giving the instruction. The *Harshaw* case with its references to a weapon stands in marked contrast to this case where there is no proof, and not even an indication, that the occupants of Sharp's car had weapons. Furthermore, the only indications that "threats" were made was Morris's self-serving testimony and Fells's contradictory testimony. What those "threats" were was never set out in testimony. The circuit court correctly concluded that this did not rise to the level of a rational basis to warrant giving the instruction.

■ The catalyst for the shooting, according to Morris, was (1) that a window was rolled down, (2) that there had previously been an argument at the nightclub parking lot, and (3) that he thought he saw a gun. The State makes a valid point in emphasiz-

ing that what Morris is arguing is that his fear of being shot, standing alone without other supporting evidence, is enough for the formation of a reckless belief that a lethal threat existed. Subjective fear of being shot, without some basis for that fear, should not be the determinant. In short, we would go too far were we to reverse the circuit court's decision and hold that a defendant's testimony that he was "scared" and "freaked out," without some supporting evidence that the victim had a weapon, was enough to entitle him to a manslaughter instruction. In *Harshaw*, we pointed to the fact that there was some evidence supporting the appellant's recklessly formed belief because the victim had "made comments about using a gun if there was a problem" and then went to his car and "reached inside the driver's window." *Harshaw*, 344 Ark. at 132, 39 S.W.3d at 756. Here, there was no such supporting evidence.

We underscore the point that it first falls to the circuit court to determine whether there is a rational basis for giving of a jury instruction. Here, the circuit court concluded that there was none. In *Harshaw*, this court pointed to a footnote in the Original Commentary to Ark. Code Ann. § 5-2-614 (Repl. 1977), which deals with the formation of a reckless belief that the use of force is necessary in the context of justified homicide. The quoted commentary reads in part:

> "We do not believe a person ought to be convicted for a crime of intention when he has labored under a mistake such that, had the facts been as he supposed, he would have been free from guilt. The unreasonableness of an alleged belief may be evidenced [sic] that it was not in fact held, but if the tribunal was satisfied that the belief was held, the defendant in a prosecution for a crime founded on wrongful purpose should be entitled to the judgment on the assumption that his belief was true."

*Harshaw*, 344 Ark. at 134 fn.1, 39 S.W.3d at 757 fn.1. In short, the Commentary looks to the tribunal, which in common parlance is the court, as the first determiner of whether a rational basis supports the reckless formation of a belief and whether a jury question, accordingly, exists. In the case before us, the circuit court found that there was no rational basis to support the reckless

formation of a belief that lethal force was about to be used and denied the instruction.

 Morris challenges the circuit court's decision that the evidence did not support the giving of the manslaughter instruction and urges that the court erred. In our judgment, the circuit court properly could discount the self-serving testimony of Morris that threats were made and the contradictory testimony of Daniel Fells, who first told police officers at the crime scene that no threats came from the Sharp vehicle and then testified to just the opposite at trial. We decline to hold that the circuit court committed reversible error in this regard.

Affirmed in part. Reversed and remanded in part.

IMBER, J., concurs in part and dissents in part.

ANNABELLE CLINTON IMBER, Justice, concurring in part and dissenting in part. While I agree with the majority that the circuit court erred in not giving an instruction on the lesser-included offense of second-degree murder, I must respectfully dissent from the majority's decision to affirm the circuit court's refusal to instruct on manslaughter. In my view, the majority's analysis on the manslaughter instruction is fatally flawed. The majority improperly weighs evidence, fails to follow Arkansas law, and the opinion itself is internally inconsistent.

First, the majority accurately states the question before this court: "[W]as there evidence, however slight, that supported giving the instruction?" Yet, as between the instructions on second-degree murder and manslaughter, there are inconsistencies in the review of the evidence. When addressing the second-degree murder instruction, the majority opinion states that "based on the fact that Morris testified that he knowingly shot at the Sharp vehicle without aiming at Chris Sharp, the victim, the jury could have believed that there was evidence to support a knowing mental state as opposed to a purposeful mental state to kill Chris Sharp." Thus, Morris's self-serving testimony regarding his subjective mental state is enough to warrant an instruction on the lesser-included offense of second-degree murder. Nevertheless, when addressing the manslaughter instruction, the majority opinion

concludes that "subjective fear of being shot, without some basis for that fear, should not be the determinant." I fail to understand how the standard of what constitutes the slightest evidence can shift from one instruction to another.

Not only does the majority adopt different standards for reviewing the evidence, it also improperly weighs evidence by stating that "the circuit court properly could discount the self-serving testimony of Morris that threats were made and the contradictory testimony of Daniel Fells." The weighing of evidence lies within the province of the jury. *See, e.g., Harmon v. State*, 340 Ark. 18, 8 S.W.3d 472 (2000). A party is entitled to a jury instruction if there is any supporting evidence for the instruction. *Henderson v. State*, 349 Ark. 701, 80 S.W.3d 374 (2002).

In reaching the conclusion that a trial judge can discount evidence, the majority opinion refers to a footnote in *Harshaw* that quoted the Original Commentary to Ark. Code Ann. Section 5-2-614 (Repl. 1977). The suggestion is then made that "the commentary looks to the tribunal, which in common parlance is the court, as the first determiner of whether a rational basis supports the reckless formation of a belief and whether a jury question, accordingly, exists." The pertinent sentence in the commentary is: "The unreasonableness of an alleged belief may be evidence that it was not in fact held, *but if the tribunal was satisfied* that the belief was held, the defendant in a prosecution for a crime founded on wrongful purpose should be entitled to be judged on the assumption that his belief was true." *Harshaw v. State*, 344 Ark. 129, 134, 39 S.W.3d 753, 757, n.1 (2001) (quoting the Original Commentary to Ark. Code Ann § 5-2-614, formerly Ark. Stat. Ann. § 41-514 (Repl. 1977) (quoting M.P.C. § 3.09, *Comment* at 78 (Tent Draft No. 8, 1958))) (emphasis added).

Apparently, the majority interprets the term "tribunal" to mean "court" and by inference "judge." Such a conclusion is contrary to the following language in a decision by the U.S. Supreme Court that has been adopted by this court: "We see no reason, so long as the jury system is the law of the land, *and the jury is made the tribunal to decide disputed questions of fact . . . ."* *Missouri Pac. R. Co. v. Ballard*, 250 Ark. 1094, 469 S.W.2d 72 (1971)

(quoting *Jones v. East Tennessee, V. & G. R. Co.*, 128 U.S. 443); *Morrison-Knudsen Co. v. Lea*, 186 S.W.2d 429, 208 Ark. 260 (1945) (quoting *Jones v. East Tennessee, V. & G. R. Co.*, 128 U.S. 443) (emphasis added); *see also Arkansas State Highway Commission v. Poteete*, 245 Ark. 430, 432 S.W.2d 774 (1968) ("In many cases the court can, as a matter of law, determine that lots are distinct or otherwise, but ordinarily it is a practical question to be *decided by the jury or other similar tribunal* which passes upon matters of fact . . .") (internal citations omitted) (emphasis added). Thus, the jury is the tribunal charged with the duty of weighing the evidence and deciding disputed questions of fact.

Even if it were proper for the judge to discount evidence, the record does not support such a finding in this case. Quite to the contrary, the trial court gave an instruction on justification, but at the same time refused to give instructions on second-degree murder and manslaughter on the ground that it would be inconsistent to instruct the jury on justification and the lesser-included offenses. The following colloquy between counsel and the trial judge illustrates the trial court's reasoning:

> PROSECUTOR: He's trying to argue both ways so either he doesn't get the justification or he doesn't get the lessers.

> DEFENSE COUNSEL: I think I get both. I think there's evidence for both.

> JUDGE: I don't think I can give both.

> DEFENSE COUNSEL: I think I, Your Honor, I mean, I respectfully think I do.

> JUDGE: I may be giving you good reversible error here but I deny your request for second and manslaughter. I'm going to give your justifiable.

A justification instruction allows the jury to consider whether the defendant reasonably believed that he was about to be subject to unlawful deadly force. *See* Ark. Code Ann. § 5-2-607 (Repl. 1997). It would defy common sense for the trial court, in weighing the evidence, to give an instruction on a defendant's belief that deadly force was necessary, and at the same time refuse an instruction on the reckless formation of that belief. In fact, the trial

judge in this case erred as a matter of law when he concluded that it would be inconsistent to give instructions on justification and the lesser-included offenses. *See Harshaw v. State, supra.*

Additionally, I would note that if "tribunal" were to mean "judge," and a manslaughter instruction is given, a defendant may not be convicted of an offense greater than manslaughter. That is because the statement from the Original Commentary would read as follows if the term "tribunal" is changed to "judge": "[I]f the *judge* was satisfied that the belief was held, the defendant in a prosecution for a crime founded on wrongful purpose should be entitled to be judged on the assumption that his belief was true." Accordingly, if the belief was formed reasonably, the defendant is entitled to be acquitted; whereas, if the belief was formed recklessly, the defendant may not be convicted of an offense that hinges on a *mens rea* of purposely or knowingly. In other words, how could a defendant be convicted of a crime involving purpose or knowledge if the defendant "acted recklessly — too hastily and without due care — in concluding that deadly force was necessary . . . ." *Harshaw v. State,* 344 Ark at 135, 39 S.W.3d at 758. Because "the *judge* was satisfied that the belief was held," the jury would be instructed that the defendant in fact held a belief that self-defense was necessary, and the jury would only decide whether that belief was formed reasonably or recklessly. Thus, under the majority's interpretation of the term "tribunal," an instruction on the lesser-included offense of manslaughter would eliminate, as a matter of law, the possibility of a defendant being convicted of any offense greater than manslaughter.

More importantly, the majority opinion fails to follow Arkansan law. We have always held that it is reversible error to refuse to give an instruction on a lesser-included offense when the instruction is supported by the slightest evidence. *Harshaw v. State,* 344 Ark. 129, 39 S.W.3d 753; *Spann v. State,* 328 Ark. 509, 944 S.W.2d 537 (1997). This court will affirm a trial court's refusal to give a lesser-included offense only if there is no rational basis for giving the instruction. *Harshaw v. State, supra; Spann v. State, supra.* Indeed, where *any* evidence to support an instruction is before the jury, that instruction must be given. *Bradford v. State,*

325 Ark. 278, 927 S.W.2d 329(1996) (citing *State v. Jones*, 321 Ark. 451, 903 S.W.2d 170 (1995)).

In *Britt v. State*, 344 Ark. 13, 38 S.W.3d 363 (2001), we affirmed a trial court's refusal to give lesser-included instructions on second-degree murder and manslaughter. The evidence showed that Britt or his accomplice shot the victims in an execution-like manner. *Britt v. State*, 344 Ark. 13, 23, 38 S.W.3d 363, 370 (2001). With respect to manslaughter, we concluded that there was no evidence presented to support a finding by the jury that Britt was acting under extreme emotional disturbance, that he acted recklessly or negligently, or that he aided another in committing suicide. *Britt v. State*, 344 Ark. at 23, 38 S.W.3d at 370 (citing Ark. Code Ann. § 5-10-104 (Repl. 1997)). Similarly, a trial court's refusal to instruct the jury on reckless manslaughter was upheld in *Ellis v. State*, 345 Ark. 415, 47 S.W.3d 259 (2001). We concluded that merely being stared at was no different from being teased, and that neither act provides a reasonable excuse for a state of emotional disturbance so great as to excuse killing. *Id.* (citing *Frazier v. State*, 309 Ark. 228, 828 S.W.2d 838 (1992)). We also pointed out that the court's decision in *Harshaw* was inapposite because the defendant in *Ellis v. State* did not assert the defense of justification. *Ellis v. State, supra.*

In contrast, this court reversed a trial court for its refusal to give jury instructions on the lesser-included offense of manslaughter in *Harshaw v. State*, 344 Ark. 129, 39 S.W.3d 753. That case involved an imperfect justification-type reckless manslaughter. *Id.* The victim had made several statements insinuating that he would settle any problems with a gun. *Id.* The victim and Harshaw then went to their respective vehicles, at which point the victim reached into his car through the window on the driver's side of the car and Harshaw retrieved a shotgun from the trunk of his car. *Id.* At trial, Harshaw testified he was afraid the victim was about to pull a pistol from the car and shoot him. *Id.* We held that there was at least some evidence that would support a finding that Harshaw acted recklessly in forming his belief that deadly force was necessary to protect himself. *Harshaw v. State, supra.* As to our prior holding in *Cobb v. State*, 340 Ark. 240, 12 S.W.3d 195 (2000), we concluded that the facts before us in *Harshaw* were

distinguishable from the facts in *Cobb*. *Harshaw v. State, supra.* Our analysis hinged on whether there was a reasonable basis in the evidence for a jury to conclude that the defendant could have formed a belief, recklessly or otherwise, that his life was in danger. *Harshaw v. State, supra.* Specifically, there was at least some evidence in *Harshaw* suggesting that the victim posed a real or deadly threat; whereas in *Cobb* there was no such evidence. *Compare Harshaw v. State, supra* (victim had made prior threats to settle a disagreement with a gun), *with Cobb v. State, supra* (defendant admitted shooting an unarmed victim once in the back causing paralysis and then shooting the victim a second time).

In this case, Morris submits that the tension between the cars caused by the earlier confrontations and the firing of a weapon by Brown provide a reasonable basis for him to have believed that he was in danger. Under such circumstances, Morris argues his belief that Jackson was reaching for a gun as he rolled down the window sufficiently supports the request for jury instructions on the lesser-included offenses of manslaughter. I agree.

From the evidence presented, a jury could have reasonably concluded that Morris recklessly formed a belief that self-defense was necessary. Under this court's holding in *Harshaw*, a defendant is entitled to a manslaughter instruction when there is some evidence to support a finding that he or she acted on the basis of an unreasonable or recklessly formed belief that the use of deadly force was necessary. *Harshaw v. State*, 344 Ark. 129, 39 S.W.3d 753. We concluded in *Harshaw* that there was "at least some evidence which would support a finding that Mr. Harshaw formed his belief in the need for use of deadly force 'too hastily and without due care,' or 'recklessly.'" *Id.* at 135, 39 S.W.3d at 757. Specifically, witnesses testified that the victim made threatening remarks and reached for something in his car immediately prior to the homicide; whereas, in *Cobb v. State*, there was no evidence that the victim posed either a real or imagined threat. *Harshaw v. State*, 344 Ark. 129, 39 S.W.39 753. Not only did the defendant in *Cobb* admit that the victim had no place to hide a gun on his person, but he also conceded that there was no reason for him to shoot the victim a second time. *Cobb v. State*, 340 Ark. 240, 12 S.W.3d 195 (2000).

From the record in this case, we must determine whether there is some evidence to support a finding that Morris acted on the basis of a recklessly formed belief that deadly force was necessary to protect himself. Here, the evidence shows that Morris and the occupants of the Sharp vehicle engaged in a series of escalating arguments. During the first confrontation, Morris, believing that Sharp was trying to run him over, stated "[i]f this car hits me, I'm going to put a hot one in them," meaning a bullet. There was also testimony by Daniel Fells that the occupants of both cars were "threatening each other. I don't remember exactly what was said but it was threats. It was arguing." Upon cross-examination, however, Fells testified he probably told police that no threats were made. The second exchange of words occurred as both cars were leaving the night club's parking lot. At this point, a weapon was fired by Kevin Brown, a passenger in the Fells vehicle. The final encounter occurred at the intersection of Asher and University, where words were exchanged once again and Leonard Jackson, a passenger in the Sharp vehicle, started rolling down his window. Morris testified that he believed Jackson was reaching for a gun and he feared for his safety. Such evidence crosses the "slightest evidence" threshold required for giving a jury instruction on the lesser-included offense of manslaughter.

We noted in *Harshaw*, "[t]he Arkansas Criminal Code is one of only a few modern codes that follow section 3.09(2) of the Model Penal Code in this respect and treat homicide in imperfect self-defense as a problem of 'reckless manslaughter, or of negligent homicide, *depending upon whether the defendant's belief* as to the necessity of the homicide was reckless or negligent.'" *Harshaw v. State*, 344 Ark. at 134, 39 S.W.3d at 757, n.1 (citations omitted) (emphasis in original). Based upon the record in this case, I believe that a manslaughter instruction was warranted; that is, there was at least some evidence that would support a finding that Morris recklessly formed his belief that deadly force was necessary to protect himself. When an instruction on a lesser-included offense is supported by even the slightest evidence, it is reversible error to refuse to give the instruction. *Harshaw v. State, supra.*

For the above-stated reasons, I must respectfully dissent from the majority's decision to affirm the circuit court's refusal to instruct on manslaughter.